**16 PAGES**

THOMAS A. WILLOUGHBY, State Bar No. 137597
LAUREN M. KAWANO, State Bar No. 309273
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: twilloughby@ffwplaw.com
e-mail: lkawano@ffwplaw.com

Proposed Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>RUSSELL WAYNE LESTER, an individual, dba Dixon Ridge Farms,<br><br>          Debtor in Possession. | CASE NO.: 20-24123-E-11<br><br>Chapter 11<br><br>DCN: FWP-2, FWP-3, FWP-4, FWP-5, FWP-6<br><br>Date:         September 1, 2020<br>Time:         1:30 p.m.<br>Courtroom: 33 – Judge Ronald H. Sargis<br>               501 I Street, 6th Floor<br>               Sacramento, CA |

**OMNIBUS DECLARATION OF RUSSELL WAYNE LESTER IN SUPPORT OF:**

**(FWP-2) DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR AN ORDER (A) AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL; (B) GRANTING REPLACEMENT LIENS; AND (C) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001;**

**(FWP-3) DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS, AND FOR RELATED RELIEF;**

**(FWP-4) DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR ORDER (A) PROHIBITING THE PACIFIC GAS AND ELECTRIC COMPANY FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, AND (B) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR POST-PETITION UTILITY SERVICES UNDER 11 U.S.C. § 366;**

**(FWP-5) DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR ORDER (I) AUTHORIZING AND APPROVING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) AUTHORIZING USE OF PRE-PETITION BANK ACCOUNTS AND BUSINESS FORMS, AND (III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B); AND**

**(FWP-6) DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR ORDER TO APPROVE THE TURNOVER OF FUNDS HELD BY RECEIVER SUBJECT TO A REASONABLE RESERVE FOR FUTURE FEE APPLICATIONS**

I, Russell Wayne Lester, declare as follows:

1.      I am Russell Wayne Lester, dba Dixon Ridge Farms, the debtor in possession ("I" or "Dixon Ridge Farms" or "Debtor in Possession") in the above-captioned chapter 11 case and am generally familiar with my farm's day-to-day operations, business affairs and books and records.

## INTRODUCTION

2.      My wife and I own a family-run organic walnut farm in Winters, California known as Dixon Ridge Farms.  My family began farming in the Santa Clara Valley in 1883.  My wife and I purchased our first ranch in Winters, CA in 1979 and established Dixon Ridge Farms shortly thereafter.  Dixon Ridge Farms owns approximately 1,400 acres in Solano and Yolo Counties. We are on the verge of a walnut harvest and I estimate that more than one million pounds of walnuts will be harvested.

3.      My immediate reason to file this Chapter 11 was to enable Dixon Ridge Farms and its employees to utilize our equipment to immediately begin preparing the ground for the harvest, and in several weeks to commence the harvest. A receiver appointed in a State Court action ("State Court Receiver") by First Northern Bank of Dixon ("First Northern Bank") had recently prohibited Dixon Ridge Farms from using its equipment for critical ground preparations for harvest, the harvest and processing.

4.      Our second reason for Chapter 11 is to complete the transition away from our long-term bank, First Northern Bank. This transition began when First Northern Bank requested that Dixon Ridge Farms reduce its borrowing from First Northern Bank apparently because of a concentration regulatory issue. Dixon Ridge Farms complied and unfortunately this decoupling that started in 2019 seems to have created a perceived collateral issue for First Northern Bank, as the bulk of the real property collateral is now held by Prudential Insurance Company of America ("Prudential") as described below.

LESTER OMNIBUS DECL.
ISO FIRST DAY MOTIONS

5.      Our third goal for this Chapter 11 is to restructure Dixon Ridge Farms' financial position by paying off First Northern Bank and our general unsecured creditors so that the debt load on Dixon Ridge Farms is such that we can survive the current trade war and the COVID-19 pandemic.

6.      The only way to accomplish these goals is to maximize the value of First Northern Bank's collateral, which is dependent on:

     a.      Maintaining the value of Dixon Ridge Farms as a going concern as a processor of organic walnuts, and

     b.      Keeping Dixon Ridge Farms' long-term employees, most of whom have been with the farm for twenty to even thirty years, who are highly skilled, loyal, and have vast institutional knowledge about the harvesting methods, processing operations and equipment, and maintaining organic walnuts, which also independently maximizes the value of the processing facilities to any future potential buyer.

7.      The problem is that at First Northern Bank's (FNB) request, FNB lost in 2019 most of the orchard and farm land collateral, and now appears to be very concerned about only being collateralized by the 68-acre Putah Creek Road property that includes our home, a walnut orchard, and multiple huge processing and storage buildings, including two 12,000 foot freezer buildings (more than half an acre of freezer space). If our business is closed down and the Putah Creek Road property is sold at receiver liquidation price, the buildings, gravel yards, processing equipment, and freezers, among many other assets, will have a vastly lower value than if they are actively being used by an organic or even a non-organic processor.

8.      Below is a chart that describes a possible difference in First Northern Bank collateral valuation between the Debtor in Possession's opinion of the value of Dixon Ridge Farms as a functioning healthy going concern organic walnut processor and what may be First Northern Bank's receiver liquidation value with a closed facility, no employees, and with no going concern value:

| First Northern Bank Collateral Analysis: | First Northern Bank Debt: | Estimated Going Concern Valuation | Forced Liquidation Discount | Estimated Liquidation Valuation | Estimated Going Concern Equity Cushion | Estimated Liquidation Valuation Equity Cushion |
|---|---|---|---|---|---|---|
| | 9,200,000 | | | | | |
| "Putah Creek Road" 68 acres, buildings and improvements at cost | | 18,081,582 | 25% | 4,520,395 | | |
| Estimated Cash in First Northern Bank | | 3,445.35 | 100% | 3,445.35 | | |
| Receiver Cash Held | | 58,656 | 100% | 58,656 | | |
| Inventory, using Receiver's values | | 3,759,737 | 70% | 2,631,816 | | |
| Equipment | | Unknown | Unknown | Unknown | | |
| Accounts Receivable | | 200,000 | 100% | 200,000 | | |
| 2020 Harvest Nuts on Trees (lien perfection requires research) | | 1,000,000 | 0% | 0 | | |
| Estimated Insurance Recovery | | 1,000,000 | 100% | 1,000,000 | | |
| **Totals:** | 9,200,000 | 24,103,420 | | 8,414,313 | 14,903,420 | (785,687) |

9.    The use of actual historical cost undervalues what an organic processor would need to expend to duplicate the equipment and buildings built by Dixon Ridge Farms. For example, my understanding is that freezer buildings are in demand and now cost more than $150 per square foot to build, and our historical cost was in the $105 per square foot range.

10.    I have no idea of the value a receiver would obtain for the Putah Creek Road Property through a forced immediate liquidation, but in my opinion, once we reopen the doors, First Northern Bank will have an equity cushion in excess of $14.9 million, however, First

LESTER OMNIBUS DECL. ISO FIRST DAY MOTIONS

Northern Bank will likely still view itself as undercollateralized on the Petition Date given that the State Court Receiver ultimately prohibited ongoing operations and sales and we were a closed company on the Petition Date.

11.     Fortunately, more than sufficient value exists in our other assets to adequately protect First Northern Bank while we reopen Dixon Ridge Farms and move forward with the 2020 harvest.

12.     The main asset to be used to restore financial solvency to Dixon Ridge Farms involves an agreement to sell for $5.7 million a conservation easement on the Carrion (96 acres) and McCune (811 acres) properties to the Solano Land Trust. This money is available because Prudential informed me at the time of the loan transaction, and as I confirmed this week, that Dixon Ranch Farms is allowed to use the proceeds as long as the easement language allows for farming, which this conservation easement does allow. The whole purpose of this easement program is to preserve farmland. Last week, I asked the Solano Land Trust to update me on the status of this easement sale, as described in more detail below. The sale is on track, both the Federal and State grant funds to the Solano Land Trust have been approved, and it is scheduled to close in June 2021. The August 28, 2020, letter from the Solano Land Trust is attached as Exhibit C to the Exhibit Document.

13.     Additionally, the Prudential loan on the bulk of Dixon Ranch Farms' orchard and farmland was valued last year at approximately 40 to 45 percent debt to equity in the Prudential loan, or approximately $25,000 per acre. Below is a table that details the additional equity that is available, if necessary, to exit Chapter 11.

///
///
///
///
///
///

| Real Property Subject to Prudential Loans | Prudential Debt | Rough Estimated Price per Acre | Value | Estimated Equity Cushion |
|---|---|---|---|---|
| | 14,000,000 | | | |
| Carrion (96 acres) | | 25,000 | 2,400,000.00 | |
| Gordon Ranch (70 acres) | | 25,000 | 1,750,000.00 | |
| McCune (811 acres) | | 25,000 | 20,275,000.00 | |
| MacQuiddy (157 acres) | | 25,000 | 3,925,000.00 | |
| Oda (200 acres) | | 25,000 | 5,000,000.00 | |
| | | | | |
| **Total** | | **25,000** | **33,350,000.00** | **19,350,000** |

14.     Even if the Putah Creek Road property has minimal real property value if valued at fire sale prices, and even if all the inventory and other assets are sold at the State Court Receiver's quick liquidation values, The $19,350,000 in equity that exists in the balance of the Debtor in Possession's real property as well as the $5,700,000 conservation easement more than enables Dixon Ridge Farms to pay all creditors in full and still recapitalize Dixon Ridge Farms to maintain its going concern value and save the 22 employees' jobs despite this COVID-19 pandemic.

## DETAILED BACKGROUND FACTS

15.     All facts set forth in this Omnibus Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by my retained professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to my farm operations, financial condition and related business issues.  The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Omnibus Declaration are my farm business records, prepared and kept in ordinary and regularly conducted business activity of the farm, and used by me for those purposes.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

16.     I submit the Omnibus Declaration in support of the following first day motions:

a.     (FWP-2) Debtor in Possession's Emergency Motion for an Order (A) Authorizing Interim and Final Use of Cash Collateral; (B) Granting Replacement Liens; and (C)

Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001;

      b.      (FWP-3) Debtor in Possession's Emergency Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits, and for Related Relief;

      c.      (FWP-4) Debtor in Possession's Emergency Motion for Order (A) Prohibiting the Pacific Gas and Electric Company from Altering, Refusing or Discontinuing Service, and (B) Determining Adequate Assurance of Payment for Post-Petition Utility Services Under 11 U.S.C. § 366;

      d.      (FWP-5) Debtor in Possession's Emergency Motion for Order (I) Authorizing and Approving Continued Use of Existing Cash Management System, (II) Authorizing Use of Pre-Petition Bank Accounts and Business Forms, and (III) Waiving the Requirements of 11 U.S.C. § 345(b); and

      e.      (FWP-6) Debtor in Possession's Emergency Motion for Order to Approve the Turnover of Funds Held by Receiver Subject to a Reasonable Reserve for Future Fee Applications.

17.      On August 27, 2020 ("Petition Date"), I filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California.  No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.  I remain as debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

18.      Over the past 30 years, Dixon Ridge Farms has provided organic walnuts to both domestic and international clientele, including companies such as J.B. Cusick, Whole Foods Markets, and United Natural Foods Inc.  Dixon Ridge Farms' walnut products are "certified organic" by California Certified Organic Farmers, one of the oldest organic certification agencies in the world, as well as the California Department of Food and Agriculture and the U.S. Department of Agriculture.  Dixon Ridge Farms has been recognized time and time again for success and leadership in sustainable and renewable farming.  Among other awards, Dixon Ridge Farms has received the Governor's Environmental and Economic Leadership Award in 2008 and 2018, the Environmental Protection Agency Sustainable Agriculture Champion Award

LESTER OMNIBUS DECL.
ISO FIRST DAY MOTIONS

in 2012, and the California Association for Family Farmers Achievement Award, Yolo County Model Farm.

19.     Several factors contributed to the need to file this Chapter 11 bankruptcy case. First, at the beginning of the 2017 walnut harvest, one of Dixon Ridge Farms' warehouse buildings located at its headquarters suffered a massive fire resulting in the destruction of the building, equipment, building materials, walnuts, and other valuable assets.  Losses from the fire totaled in approximately $4.8 million for which Dixon Ridge Farms has received partial payment of its insurance claim for recovery. It is my belief that approximately an additional $1,000,000 in losses are likely recoverable from the insurance company for the fire losses.  However, because the warehouse fire rendered the building inoperative, it must be demolished.  Dixon Ridge Farms was also forced to replace equipment destroyed by the fire and to take losses on its walnut inventory destroyed in the fire.

20.     Second, the current oversupply of organic walnuts has stifled Dixon Ridge Farms' sale of its product. Due to overseas competition, trade war tariffs, and the COVID-19 pandemic, the demand for organic walnuts has greatly decreased since March, leaving Dixon Ridge Farms with walnut inventory as well as unharvested crops that will lose their value of approximately $1 million if not harvested by the end of the harvest season which is generally in October.  If the 2020 crop is not timely harvested, removing the destroyed crop will cost the estate significantly more than the cost of harvesting and creating inventory.

21.     Due to the temporary decrease in organic walnut demand, Dixon Ridge Farms plans to buy and process fewer walnuts over the course of 2020 and 2021 which will allow for the selling down of excess inventory and will bolster margins through 2021.

22.     Finally, despite continuing efforts to make First Northern Bank, whole, Dixon Ridge Farms was unable to pay off the Ag Production Loan and ABL (defined below) which resulted in the RE Loan (defined below) becoming due in full as well.  As of the Petition Date, approximately $9.2 million is owed to First Northern Bank. Dixon Ridge Farms attempted to find alternative financing, but the economic conditions caused by the COVID-19 crisis made that

LESTER OMNIBUS DECL.
ISO FIRST DAY MOTIONS

not possible at that time.

23.      On June 12, 2020, First Northern Bank filed an ex-parte application for the appointment of a receiver with the California Superior Court for the County of Solano, to take possession of, manage, preserve and in some instances liquidate, Dixon Ridge Farms' inventory, equipment, accounts, and other tangible and intangible property pledged as collateral for debts to First Northern Bank. At the ex parte hearing, the state court issued an order appointing Donald G. Howell as receiver over First Northern Bank's collateral under two of its loan agreements with me doing business as Dixon Ridge Farms and issuing a temporary restraining order barring me from using or expending any of First Northern Bank's collateral under the two loan agreements, which included inventory, accounts, and equipment, among other things, as further described below. On June 29, 2020, the state court issued an order confirming Mr. Howell's appointment as receiver and issuing a preliminary injunction restraining and enjoining me from retaining possession of the collateral. Pursuant to the state court's orders. Mr. Howell has commenced receivership duties and made multiple trips to the Dixon Ridge Farms farm to determine property included in First Northern Bank's collateral. To date, Mr. Howell has not taken any action to ensure the 2020 crop is timely harvested.

24.      While the receivership order encompassed First Northern Bank's collateral on two loans to me doing business as Dixon Rider Farms, I also had the existing RE Loan from First Northern Bank that was secured by the Putah Creek Road property. On August 4, 2020, First Northern Bank recorded a notice of default and election to sell under deed of trust, thereby initiating a nonjudicial foreclosure on the Putah Creek Road property.

25.      In effect, Dixon Ridge Farms, prior to the Petition Date, no longer has access to the equipment and vehicles necessary to harvest the 2020 walnut crop, which must be harvested soon or will otherwise result in a loss of income from the crop and become waste that the estate will certainly incur costs to remove causing further harm to the estate.

26.      In an effort to pay debts owed to First Northern Bank and Prudential (collectively "Secured Creditors") as well as our debts to our general unsecured creditors, and to preserve my

homestead property and save the 2020 crop, I had no choice but to file the chapter 11 petition.

27.    As of the Petition Date, Dixon Ridge Farms' farm consists of approximately 1,400 acres encompassing the following properties and a potential conservation easement:

    a.    **Putah Creek Road.** The Putah Creek Road property is located at 5430 Putah Creek Road, Winters, California 95694, APN 107-080-040, in Solano County. The Putah Creek Road property consists of approximately 68 acres of which Dixon Ridge Farms farms approximately 47 acres of organic walnuts. The Dixon Ridge Farms headquarters, processing plant and other outbuildings and improvements as well as my primary residence are located at the Putah Creek Road property as shown in the Google map image of the property attached as Exhibit A to the Exhibit Document in support of the Motion ("Exhibit Document"), filed concurrently herewith. The Putah Creek Road property serves as collateral for the RE Loan issued to me by First Northern Bank, as further described below.

    b.    **Carrion Ranch.** The Carrion property consists of approximately 96 acres of organic walnuts on real property located in Solano County, APN 107-080-160. The Carrion Ranch property serves as collateral for the Prudential 1 Loan, as further described below.

    c.    **Gordon Ranch.** The Gordon property consists of approximately 70.3 acres of organic walnuts on real property located in Yolo County, south of Madison, County Road 89, APN 050-100-015 and 050-100-032. The Gordon property serves as collateral for the Prudential 1 Loan, as further described below. I listed the Gordon property for sale on March 18, 2020. A true and correct copy of the sale listing is attached to the Exhibit Document as Exhibit B, filed concurrently herewith.

    d.    **McCune Ranch.** The McCune property consists of approximately 811 acres of real property located in Solano County south of the Carrion Ranch, APN 0107-

110-020, 0107-110-060, 0107-110-070, 0107-130-110, 0107-130-120. The McCune property serves as collateral for the Prudential 2 Loan, as further described below.

e. **MacQuiddy Ranch**. The MacQuiddy property consists of approximately 157 acres on real property located in Yolo County on Walnut Bayou Lane, Winters, CA, APN 038-090-005. The MacQuiddy property serves as collateral for the Prudential 1 Loan, as further described below.

f. **Oda Ranch**. The Oda property consists of approximately 200 acres of organic walnuts on real property located in Yolo County on County Road 18, North of Woodland, East of I-5, adjacent to Cache Creek, APN 027-180-06. The Oda Ranch serves as collateral for the Prudential 1 loan, as further described below.

g. **Conversation Easement**. As described in an August 28, 2020, letter from the Solano Land Trust, which is attached as <u>Exhibit C</u> to the Exhibit Document, my wife and I "have entered into an agreement to place the McCune and Carrion properties under an Agricultural Conversation Easement." The price to be paid for this Easement is $5,700,000 and is anticipated to be received by mid-year 2021.

h. **Valuation of Real Property Collateral Excluding Putah Creek Road Property**. Based on my understanding of the valuation method used by Prudential in evaluating the 1,332 total acreage of the Carrion, Gordon, MacQuiddy, Oda and McCune properties, the total estimated value is $33.4 million at $25,000 per acre, but I did not receive a copy of any appraisal obtained by Prudential. I believe and understand that there have been recent sales in the local area of bare farm land ground for $25,000 per acre range, and for acreage with orchards in the $30,000 per acre, which is similar to the values referenced above as Prudential's valuation of its collateral. I believe that the land values for the acreage, excluding the Putah Creek Road property, will vary

LESTER OMNIBUS DECL.
ISO FIRST DAY MOTIONS

from $25,000 to in excess of $30,000 per acre. A true and correct copy of my estimation of the value of the real property is attached as <u>Exhibit D</u> to the Exhibit Document. Prior to filing a plan, I intend to reach out and obtain broker opinions of value respecting these estimates.

    i. **Valuation of the Putah Creek Road Property.** The Putah Creek Road property includes my residence, and multiple large processing and storage buildings, including two 12,000 square foot (more than half an acre) freezer buildings for the organic walnuts used to eliminate insects without the need for chemicals and used to preserve quality of walnuts over time, as well as seven other major business buildings, plus a separate shop building. The total square footage for all the business buildings is approximately 216,310 square feet, less a warehouse that burned down in 2017 (52,800), for 163,510 square feet of buildings. I value these buildings at an average of approximately $60 per square foot. Attached as <u>Exhibit D</u> to the Exhibit Document filed herewith is a valuation of the Putah Creek Road property buildings and improvements at estimated actual prior cost basis at $16,381,581.78. The Putah Creek Road property land is valued at $25,000 per acre and it includes 47 acres of walnut orchard. The total estimated value of the Putah Creek Road property is $18,081,582.

28.    Dixon Ridge Farms has the following assets:

    a. **Cash in Accounts**. In cash accounts in which I have signatory authority, Dixon Ridge Farms has approximately $182,405.24 in cash as of the Petition Date. I do not believe that First Northern Bank has a security interest in cash in accounts not at First Northern Bank, which totals approximately $3,445.35 of the above total.

    b. **Cash in Receiver Accounts**. I believe that the receiver account has approximately $58,655.89 in cash net of the State Court Receiver's requested

reserve for fees and expenses held by State Court Receiver in the action filed by First Northern Bank, which is crucial to be turned over immediately for use in the upcoming harvest.

c.  **Cash in Kathleen Lester Accounts**. Kathleen Lester is my wife, and has not filed a bankruptcy petition. She is a public-school teacher in Winters, California, and if needed, she will file her own bankruptcy case. She has for a long period of time had personal accounts on which only she has been a signatory. She has agreed to use those accounts, and her post-petition earnings only for our ordinary living expenses.  The total amounts spent shall be reported on the monthly operating reports. As of the Petition Date, the total in these accounts is approximately $33,518.68.  I do not believe that any creditor has a security interest in these accounts.

d.   **Inventory**. Dixon Ridge Farms has approximately 3,915,003 in total "In-Shell" and "Meat" pounds of walnuts based on Exhibit D to the State Court Receiver's first status report, and he valued this inventory in his status report at $3,759.737, which is attached as Exhibit E to the Exhibit Document.  I believe this estimate is based on potential quick bulk sales of all the walnuts.

However, if the Court approves the use of cash collateral and allows the business to reopen and commence making market sales, the valuation will increase post-petition almost immediately to reflect the higher prices to be obtained from ordinary course and anticipated post-petition bulk sales as opposed to only bulk sales. All ordinary course sales will immediately provide an increase in the value of the inventory

e.  **Equipment.** I have not received from the receiver or First Northern Bank any estimate of what the value of all my equipment is worth, but the receiver was poised to move all equipment to a small local auction site in Woodland, California managed by West Auctions. Such a process would have resulted in a

minimal value. The replacement cost of the equipment, however, would likely be prohibitive, and is one of the driving reasons for this Chapter 11 filing. Without the equipment, over one million pounds of 2020 walnuts on Dixon Ridge Farms' trees cannot be harvested.

    **f. Accounts Receivable**. Without being in control, I do not know the exact amount of accounts receivable but based on an email to my counsel by the State Court Receiver's counsel, I estimate current accounts receivable amount is approximately $200,000.

    g. **2020 Harvest**. The current estimate for the value of the 2020 harvest is approximately $1,000,000. Without approval of cash collateral, this value will disappear. First Northern Bank has not recorded a deed of trust on the 1,334 acres of land on which Prudential Insurance Company of America has recorded deeds of trust, but First Northern Bank has filed a UCC-1 financing statement listing crops as collateral and has asserted a lien on the growing crops.

29.     I have done business with First Northern Bank for the past 30 years. In 2018 and 2019, I obtained an agricultural production loan ("Ag Production Loan") and an asset-based line of credit ("ABL") under which First Northern Bank is owed approximately $7.8 million. Previously, in 2009, I obtained a real estate term loan in the original principal amount of $2,000,000 in 2009 ("RE Loan"). Approximately $1.4 million remains due on the RE Loan.

30.     Under both the Ag Production Loan Security Agreement and the ABL Security Agreement, First Northern Bank asserts a blanket security interest in

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles, Crops, Farm Equipment and Contracts; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter raised or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Service Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing: all

proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

Ag Production Loan Security Agreement at pp.1-2; ABL Security Agreement at pp. 1-2.

31.    First Northern Bank's security interests in the Ag Production Loan collateral and the ABL collateral are perfected by several UCC-1 financing statements, amendments, and continuation statements filed with the California Secretary of State.

32.    Under the loan documents for the Ag Production Loan, Dixon Ridge Farms promised to pay the full principal amount of the loan on January 30, 2020.   Under the loan documents for the ABL, Dixon Ridge Farms promised to pay the full principal amount of the line of credit on June 5, 2020.

33.    Due to shifts in the demand for walnuts as well as the impact of the COVID-19 pandemic on the walnut industry, Dixon Ridge Farms was unable to make the payments on the Ag Production Loan and the ABL when they were due.  As a result, the full amount of the RE Loan became due, thus approximately $9.2 million remaining due to First Northern Bank as of the Petition Date.

**Secured Creditor Prudential Insurance Company of America**

34. In April 2019, Dixon Ridge Farms borrowed $14 million from Prudential Insurance Company of America ("Prudential") to refinance certain debt to First Northern Bank and other secured creditors.   I entered into a loan agreement with Prudential under which an initial loan amount of $6.5 million ("Prudential 1 Loan") was issued in April 2019 and a subsequent shelf loan of $7.5 million ("Prudential 2 Loan") was issued on March 13, 2020.  The Prudential 1 Loan and Prudential 2 Loan were secured by separate collateral including my real property and personal property. To secure the Prudential 1 Loan, Prudential received a first priority deed of trust on the Carrion, Gordon, MacQuiddy, and Oda properties as well as first priority liens on Lester's personal property including all crops, irrigation, frost protection, and drainage equipment, contracts, agreements, and leases, water rights, and other intangible //

//

property.

35. The Prudential 2 Loan was secured by the existing collateral for Prudential 1 Loan as well as a first deed of trust on the McCune property.

**Possible Producer Lien Claimants**

36. Dixon Ridge Farms purchased and processed walnuts from multiple organic walnut growers in 2019. My understanding of the contractual arrangement involved a payment of 75% of the estimated final price by December 31, 2019. This estimated payment has been made to all growers. The final payment, if any, was due growers on April 30, 2020. However, the market price for organic walnuts had declined by April 30, 2020 to the point at which none of the growers were entitled to any additional payments. The potential producer lien creditors are included in this Motion just in case some growers assert that amounts remain due under the various walnut purchase contracts.

**CONCLUSION**

37. I am fortunate that the price of our farmland is holding up well in this pandemic and that particularly the Solano Land Trust has already done the work to obtain the funding to purchase the Conservation Easement that will help our company recapitalize and preserve our local farmland for the indefinite future.

38. Promoting organic walnuts and preserving farmland is good business.

39. Even if it ultimately becomes necessary to sell some of our farmland and orchards to maintain the going concern value of our business, I am ready and able to undertake that step.

40. I strongly believe that allowing us to reopen Dixon Ridge Farms is in the best interests of all the creditors, parties in interest, particularly our secured creditors, employees, customers and suppliers, and I respectfully request that the emergency relief requested in the First Day Motions be granted.

I declare under penalty of perjury that the foregoing it true and correct. Executed on August 30, 2020 at Winters, California.

_/s/ Russell Wayne Lester_
RUSSELL WAYNE LESTER