**14 PAGES**
H. Mark Mersel, State Bar Number 130382
**Bryan Cave Leighton Paisner LLP**
3161 Michelson Dr #1500
Irvine, CA 92612
Telephone 949.223.7160

Jason J. DeJonker (*pro hac vice admission granted*)
Nicholas R. Marcus (*pro hac vice admission granted*)
**Bryan Cave Leighton Paisner LLP**
161 N. Clark Street, Suite 4300
Chicago, IL 60601
Telephone 312.602.5005
Jason.DeJonker@bryancave.com
Nick.Marcus@bryancave.com

**Counsel for Secured Creditor The Prudential Insurance Company of America**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-24123-E-11 |
| RUSSELL WAYNE LESTER, an individual ) | |
| d/b/a Dixon Rudge Farms ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

## SECURED CREDITOR PRUDENTIAL'S OBJECTION TO DEBTOR'S MOTION FOR AN ORDER AUTHORIZING FINAL USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS AND RESERVATION OF RIGHTS

Secured creditor The Prudential Insurance Company of America ("**Prudential**"), as secured lender to debtor Russell Wayne Lester ("**Debtor**"), through counsel, files this Objection and Reservation of Rights (the "**Objection**") to *Debtor's Motion for an Order Authorizing Final Use of Cash Collateral and Granting Replacement Liens* (the "**Motion**") and states as follows:

## I.　Introduction.

1.　Prudential objects to the Motion because it does not adequately protect Prudential as required by Section 363 of the United States Bankruptcy Code[1] and it overprotects First National Bank of Dixon ("**FNB**").  Prudential further objects to the Motion because certain of its provisions are unclear, leading to a lack of certainty as to the ultimate relief sought and adequate protection provided.

## II.　Background.

### A.　*The Prior Agreements Between Prudential and Debtor.*

2.　On or about April 29, 2019 Prudential and Debtor entered into a loan agreement under which Prudential agreed to make a loan to Debtor in the principal amount of Six Million Five Hundred Thousand Dollars ($6,500,000) (the "**Loan Agreement**").  The Loan Agreement provided for the possibility of Prudential disbursing an additional Seven Million Five Hundred Thousand Dollars ($7,500,000) to Debtor.  Debtor's indebtedness under the Loan Agreement is evidenced by a Promissory Note, dated April 29, 2019, in the original principal amount of Six Million Five Hundred Thousand Dollars ($6,500,000) (the "**First Note**").

3.　The First Note is secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases, and Agreements dated April 29, 2019 (the "**First Deed of Trust**"), which was filed in the Yolo County Recorder's Office at document number 2019-0009060-00 and in the Solano County Recorder's Office at document number 201900026034.  Pursuant to the First Deed of Trust, Debtor granted to Prudential, among other things: (a) a security interest in properties commonly identified by Debtor and Prudential as Carrion Ranch, Gordon Ranch, MacQuiddy

---

[1]　The United States Bankruptcy Code, codified at 11 U.S.C. §101, *et seq*. (the "**Code**").

Ranch, and Oda Ranch;[2] (b) a security interest in all crops growing or grown thereafter on those properties; and (c) a security interest in and assignment of all proceeds generated from those properties or the crops grown thereon.

4. Prudential perfected its security interests in the personal property, including the crops, granted under the First Deed of Trust by filing a UCC-1 financing statement on May 10, 2019 with the California Department of State, filing number 197711920562.

5. On or about March 5, 2020 Prudential and Debtor entered into a modification of the Loan Agreement under which Prudential agreed to disburse to Debtor the additional Seven Million Five Hundred Thousand Dollars ($7,500,000), as contemplated by the Loan Agreement (the "**Loan Agreement Modification**"). Debtor's indebtedness under the Loan Agreement Modification is evidenced by a Promissory Note, dated March 5, 2020, in the original principal amount of additional Seven Million Five Hundred Thousand Dollars ($7,500,000) (the "**Second Note**" and together with the First Note, the "**Notes**"). Under the Notes, the principal balance of the loans between Debtor and Prudential, as of the Petition Date (as defined below), totals fourteen million dollars ($14,000,000).

6. The Second Note is secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases, and Agreements, dated March 5, 2020 (the "**Second Deed of Trust**"), which was filed in the Solano County Recorder's Office at document number 202000020880, and that certain Modification of Deed of Trust, dated March 5, 2020, which modifies the First Deed of Trust, which was filed in the Yolo County Recorder's Office at document number 2020-0007471 and in the Solano County Recorder's Office at document number 202000020881 (the "**Modification of Deed of Trust**"). Pursuant to the Second Deed of Trust, Debtor granted to Prudential, among

---

[2] These parcels are defined and more fully described in the Loan Agreement and the First Deed of Trust.

other things: (a) a security interest in McCune Ranch;[3] (b) a security interest in all crops growing or grown thereafter on that property; (c) and a security interest in and assignment of all proceeds generated from that property or the crops grown thereon.

7.　　　　Prudential perfected its security interests in the personal property, including the crops, granted under the Second Deed of Trust by filing a UCC-3 financing statement amendment on March 15, 2020 with the California Department of State, filing number 2077680551. This amended the UCC-1 that Prudential previously filed to encompass the additional collateral granted under the Second Deed of Trust.

8.　　　　Pursuant to the Loan Agreement Modification, the Second Deed of Trust, and the Modification of Deed of Trust, all collateral granted to Prudential under the First Deed of Trust and the Second Deed of Trust secures both the First Note and the Second Note and the indebtedness evidenced thereunder. As a result, all collateral Debtor pledged to Prudential secures all indebtedness Debtor owes to Prudential.

9.　　　　Through these loan documents, Prudential has a first priority security interest in Carrion Ranch, Gordon Ranch, MacQuiddy Ranch, Oda Ranch, and McCune Ranch, securing the entirety of the indebtedness owed to it. In addition, among other things, Prudential has a security interest in all crops grown on Carrion Ranch, Gordon Ranch, MacQuiddy Ranch, and Oda Ranch in 2019 and thereafter as well as a security interest in all crops grown on McCune Ranch in 2020 and thereafter. Upon information and belief, FNB also has a security interest in all crops grown on Carrion Ranch, Gordon Ranch, MacQuiddy Ranch, Oda Ranch, and McCune Ranch. As a result, it is unclear which party has priority in its security interests in these crops and whether the junior lienholder is fully or partially secured.

---

[3]　　　This parcel is defined and more fully described in the Loan Agreement Modification and the Second Deed of Trust.

B.     *Debtor's Motion for Cash Collateral.*

10.    The Motion sought authority to use $166,325.00, plus a 15% variance, through the period ending September 16, 2020 (the "**Interim Relief**") and final authority to use cash collateral pursuant to a 13-week budget, ending the week of November 27.

11.    The 13-week budget sets forth Debtor's estimated cash receipts and disbursements over that period. According to the 13-week budget, Debtor estimates that it will have an aggregate $2,613,827 in cash receipts and an aggregate of $1,860,867 in cash disbursements, with a net cash flow of $752,961. These disbursements include, *inter alia*, scheduled quarterly interest payments due under the Notes to Prudential in the amount of $162,363 and a "Payment for Adequate Protection" to FNB in the amount of $500,000. Other than this line item in the 13-week budget, there does not appear to be any other mention of this adequate protection payment to FNB in Debtor's pleadings.

12.    The 13-week budget also earmarks $45,875 in payments for insurance, although it is unclear if this insurance payment provides coverage for all of Debtor's assets (or, at a minimum, the collateral and real estate subject to Prudential's liens).

13.    The Motion also proposes granting adequate protection to FNB and Prudential in the form of replacement liens on cash collateral and in the "Conservation Easement."

14.    According to the Motion and its supporting documents, the Conservation Easement on Carrion Ranch and McCune Ranch restricts the usage of those properties to farming. In return for this restriction, Debtor will receive $5.7 million. However, the Motion makes it unclear whether Debtor intends to actually grant replacement liens in the easement itself or simply in the proceeds generated therefrom. Prudential requests that Debtor provide clarification on this replacement lien in advance of the hearing on cash collateral.

15. With the consent of FNB and Prudential, this Court entered an order authorizing the Interim Relief and granting adequate protection (the "**Interim Order**"). However, the Interim Order also provided FNB adequate protection through a replacement lien on the property commonly referred to as the Putah Creek Road property and a first-priority lien on all crops growing or grown in the 2020 crop year. Although the Motion did not contemplate this adequate protection, Prudential consented to Debtor providing it on an interim basis. Going forward, Prudential would request similar relief given its security interests and collateral described above.

### III. Prudential's Objection to Use of Cash Collateral and Adequate Protection.

16. To authorize Debtor's use of cash collateral pursuant to Code sections 363(c)(2) and (e), this Court must first find that Prudential's interest in the cash collateral is adequately protected. *In re Plaza Family P'ship*, 95 B.R. 166, 171 (E.D. Cal. 1989) ("Cash collateral can be authorize only where secured creditors are adequately protected in accordance with Bankruptcy Code section 363(e)"). Debtor has the burden of demonstrating that secured creditors are adequately protected. *See* 11 U.S.C. § 363(p)(1); *In re Scottsdale Medical Pavilion*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993).

17. The purpose of adequate protection is to safeguard the secured creditor against the depreciation of its collateral. *In re Weinstein*, 227 B.R. 284, 296 (9th Cir. B.A.P. 1998). Thus, a creditor's interest in its collateral must be protected from diminution while any property, including cash collateral, is being used or retained in the bankruptcy case. *In re Gallegos Research Grp., Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995).

    A. *Prudential Objects to Liens in the Conservation Easement.*

18. The Motion proposes granting Prudential and FNB replacement liens in the Conservation Easement, to which Prudential objects. From the face of the Motion, it is unclear

what exactly Debtor seeks to grant liens "in." While the Motion purports to grant liens in the Conservation Easement itself, Prudential does not believe this is possible. The Conservation Easement is effectively a restriction on use of land and not a separate, tangible asset that can be subject to liens. It is Prudential's understanding that, under applicable California law, it is impossible to grant a lien directly in such an easement. Upon information and belief, Debtor seeks to grant replacement liens in the proceeds of the Conservation Easement. This must be clarified.

19. Further, the proceeds of the Conservation Easement stem from Carrion Ranch and McCune Ranch, as the easement is being placed on those properties. Pursuant to the First Deed of Trust and Second Deed of Trust, Debtor granted Prudential a security interest in these properties and assigned to Prudential all proceeds from these properties, and thus Prudential believes that it may already have a lien on the proceeds of the Conservation Easement once those proceeds arise. As stated above, Prudential objects to FNB receiving replacement liens on any real property or related proceeds in which FNB does not already hold a mortgage or security interest. Because FNB has no interest in Carrion Ranch or McCune Ranch, FNB should not now receive a lien in the proceeds therefrom.

20. Finally, liens in the proceeds of the Conservation Easement are unnecessary due to the ample equity allegedly available in real property that may be subjected to additional replacement liens, as set forth in more detail in subsection D below.

21. To the extent that this Court does determine that granting replacement liens in the proceeds of the Conservation Easement is appropriate, any lien granted to FNB must be subordinate to the senior security interests and liens of Prudential. This ensures that adequate protection is not used to improve FNB's position to the detriment of Prudential.

B.   *Prudential Objects to the Proposed Variance in The Budget.*

22.   In support of the Motion, Debtor includes a proposed budget that provides for a budget variance on the use of funds that is significantly higher than normal and is unreasonable. While the Motion only refers to a 15% variance on funds used with respect to the Interim Relief, upon information and belief, Debtor intends to apply this variance to all funds under the 13-week budget. If allowed, Debtor could disburse over $270,000 in funds beyond what is allotted in the 13-week budget without seeking consent from this Court, Prudential, or FNB.

23.   Prudential is cognizant that emergencies may arise requiring the use of funds beyond those specifically earmarked in the 13-week budget, but it is common practice for this variance to be 5%. To the extent that Debtor does seek a 15% variance with respect to the 13-week budget, Prudential objects.

C.   *Prudential Objects to Replacement Liens on Inventory and Crops.*

24.   The Motion does not contemplate explicit replacement or priming liens on any of Debtor's current inventory or crops grown or growing in the year 2020 harvest year (the "**2020 Crops**"). However, the Interim Order did provide FNB (but not Prudential) with replacement liens on certain crops to the extent of diminution in its collateral caused by the Interim Relief.

25.   As stated above, both FNB and Prudential claim a perfected security interest in Debtor's crop inventory and the 2020 Crops. The priority of these security interests has not yet been determined. Because the value of the inventory and the 2020 Crops may not be sufficient to fully secure either party's claim, the junior party may be undersecured or unsecured on these assets. As a result, any priming lien granted on these assets will, in all likelihood, cause the junior party to be further undersecured (or completely out of the money) on these assets.

26. As a result, and because both FNB and Prudential have access to alleged ample equity in their respective real estate,[4] it is unnecessary to add further liens to the inventory and 2020 Crops. Doing so will only be to the detriment of the junior secured creditor, an outcome that adequate protection is meant to avoid.

27. As mentioned above, the Motion does not specifically request the granting of such adequate protection. However, the Interim Order *does* grant such adequate protection, which muddies the waters as to the exact relief being sought. Therefore, and for the avoidance of doubt, to the extent that the Motion seeks to provide adequate protection by granting liens in the inventory and 2020 Crops, Prudential objects. To the extent that this Court does authorize replacement liens on the inventory and 2020 Crops, Prudential requests that such replacement liens be granted in equal amounts and priority to both Prudential and FNB in order to ensure that neither party receives additional security at the expense of the other. This is particularly salient as the priority of secured interests in the inventory and 2020 Crops has not been adjudicated.

   D. *Prudential Objects to Proposed Replacement Liens on Assets Other Than The Real Estate.*

28. As stated above, FNB maintains a security interest in the Putah Creek Road property. This collateral, according to FNB, secures its real estate loan and home equity loan, an aggregate principal amount of approximately $1.9 million. According to Debtor, this property is worth approximately $18 million.

29. Prudential maintains security interests in Carrion Ranch, Gordon Ranch, MacQuiddy Ranch, Oda Ranch, and McCune Ranch. This collateral secures all of Debtor's

---

[4] The respective real estate refers to the Putah Creek Road property for FNB and Carrion Ranch, Gordon Ranch, MacQuiddy Ranch, Oda Ranch, and McCune Ranch for Prudential. Upon information and belief, each party is the only party secured by its respective real estate.

indebtedness to Prudential, which has a principal balance of $14 million. According to Debtor, these properties have an aggregate value of approximately $33 million.

30. Because both secured parties' collateral allegedly maintains equity, replacement liens should only be granted to those parties to the extent of their respective real estate. In other words, FNB should receive replacement liens only on the Putah Creek Road property while Prudential should only receive replacement liens on Carrion Ranch, Gordon Ranch, MacQuiddy Ranch, Oda Ranch, and McCune Ranch. This ensures that the secured parties are adequately protected without detriment to other creditors.

    E.    *Prudential Objects to the FNB Adequate Protection Payment.*

31. The proposed adequate protection payment to FNB is overbroad and unnecessary, unjustified, and will result in a potential diminution in Prudential's collateral. The Motion does not explicitly state that FNB will receive any adequate protection payments. However, the end of the 13-week budget includes a $500,000 payment to FNB described as a "Payment for Adequate Protection." The Motion does not adequately disclose this payment or justify why such an outsized payment to FNB is necessary since FNB will be receiving replacement liens. In fact, a payment of $500,000 represents nearly 30% of all disbursements Debtor plans to make over the life of its 13-week budget.

32. Adequate protection is mean to safeguard a secured creditor's interests in collateral, not improve their position or act as a windfall. *See In re Weinstein*, 227 B.R. 284, 297 (B.A.P. 9th Cir. 1998) (noting that "[p]ermitting such a bonus would be akin to providing the undersecured creditor with interest or lost opportunity costs which is expressly prohibited by *Timbers*"); *see also In re Pine Lake Vill. Apartment Co.*, 19 B.R. 819, 824 (Bankr. S.D.N.Y. 1982) ("Neither the legislative history nor the Code indicate that Congress intended the concept

of adequate protection to go beyond the scope of protecting the secured claim holder from a diminution in the value of the collateral."). This outsized payment does just that.

33. The payment is particularly problematic because it will presumably be made through the proceeds of sales of inventory and/or the 2020 Crops, in which Prudential has a security interest. Because the priority of security interests in these assets has not been adjudicated, paying FNB directly from these proceeds threatens to enrich FNB by directly diminishing Prudential's collateral.

34. Further, Debtor states that a decrease in sales, and therefore revenue, was one of the three causes of its bankruptcy filing. Motion, ¶6. A payment of this size will threaten to once again push Debtor into a position where it will have insufficient funds on hand to pay its ordinary course expenses as they come due, requiring further adjustments to its operations, sales of assets, or funding from external sources.

35. Finally, Section 361(1) of the Code authorizes one-time or periodic cash payments to secured creditors, but only to the extent that such creditor's collateral decreases in value. 11 U.S.C. §361(1); *In re Plaza Family P'ship*, 95 B.R. 166, 171 (E.D. Cal. 1989). Because the Motion does not mention this payment, it does not set forth how FNB's collateral will decrease in value by $500,000, particularly in light of the replacement liens already offered.

36. In light of the ample replacement liens FNB will receive, particularly on the Putah Creek Road property, FNB's position is adequately protected. Paying them an additional $500,000 without adequate disclosure or justification is an unneeded bonus to the detriment of all other creditors and the estate and threatens to diminish Prudential's collateral in the process.

*F. Prudential Seeks Clarification Regarding Itemized Insurance Payments in the Budget.*

37. Ensuring that a debtor's property is insured is not only a common aspect of providing adequate protection to a secured creditor, it also preserves those assets for the benefit of the estate and all creditors

38. In this case, the properties in which Prudential has security interests must be insured to ensure compliance under the loan documents, to adequately protect this property, and for the benefit of the estate and all creditors as these properties represent the bulk of Debtor's assets.

39. To date, Prudential has had no indication that Debtor has let insurance lapse on these properties or otherwise failed to insure them.

40. Furthermore, the 13-week budget earmarks $45,875 in payments for insurance across the life of the budget. However, the budget does not identify the purpose(s) of this insurance (whether it be for real property, employees, equipment, etc.). For clarity and the avoidance of doubt, Prudential requests that the purposes of such insurance be identified. To the extent that none of these insurance payments are for the real property in which Prudential has a security interest and no otherwise current insurance exists, Prudential objects.

*G. Prudential Requests that Cash Collateral Be Used to Pay Its Reasonable Attorney Fees.*

41. It is common practice for cash collateral to be used to pay secured creditors' reasonable legal fees in connection with the enforcement of such creditors' rights during a bankruptcy proceeding. Payment of such fees as adequate protection are typically granted under section 361(3) as part of the "other relief" allowed under that section. Prudential requests that the 13-week budget also account for payment of Prudential's reasonable legal fees and expenses, as

well as the cost of any appraisals or other valuations of Debtor's property securing Debtor's indebtedness to Prudential.

42. These fees and expenses will be reasonable and are a part of the secured indebtedness Debtor owes to Prudential. Debtor has already earmarked $50,000 in the 13-week budget to be paid to an unsecured creditor's committee. To date, Prudential has heard no indication that such a committee will be formed or that there is even interest in unsecured creditors to form such a committee. If this holds true, those funds can simply be used to pay Prudential's legal expenses instead.

### IV. Reservation of Rights

43. As set forth above, the 13-week budget earmarks $162,363 in interest payment to Prudential. Prudential reserves all rights regarding determination of the amount of interest actually owed by Debtor and Prudential's acceptance of such interest payments do not and should not be considered an agreement or waiver as to the amount of interest actually owed.

44. Furthermore, nothing in this Objection is intended to be or should be considered an acceptance of the property valuations submitted by Debtor. Prudential reserves all rights to challenge such valuations or conduct appraisals of its own to accurately determine the value of its collateral, the cost of which shall be added to the secured indebtedness Debtor owes to Prudential.

45. Finally, Prudential has not seen a draft of the proposed Final Cash Collateral Order. As a result, Prudential may have additional objections based upon the language of such order and reserves the right to make such further objections.

**V. Conclusion**

WHEREFORE, Prudential respectfully requests that this Court modify the relief requested in accordance with this Objection and grant such other relief as this Court deems just and proper.

Dated: September 14, 2020

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Mark Mersel*
H. Mark Mersel
**Bryan Cave Leighton Paisner LLP**
3161 Michelson Dr #1500
Irvine, CA 92612
Telephone 949.223.7160
Mark.Mersel@bryancave.com

-and-

Jason J. DeJonker (*pro hac vice admission granted*)
Nicholas R. Marcus (*pro hac vice admission granted*)
**Bryan Cave Leighton Paisner LLP**
161 N. Clark Street, Suite 4300
Chicago, IL 60601
Telephone 312.602.5005
Jason.DeJonker@bryancave.com

**Attorneys for Secured Creditor**
**The Prudential Insurance Company of America**