**5**

DOUGLAS H. KRAFT, ESQ. (STATE BAR NO. 155127)
KRAFT LAW
11335 Gold Express Drive, Suite 125
Gold River, California 95670
Telephone: (916) 880-3040
Facsimile: (916) 880-3045

HEFNER, STARK & MAROIS, LLP
Howard S. Nevins (CA BAR ASSN NO. 119366)
Aaron A. Avery (CA BAR ASSN NO. 245448 )
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-4136
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: hnevins@hsmlaw.com

Attorneys for
FIRST NORTHERN BANK OF DIXON,
Creditor

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re<br><br>RUSSELL WAYNE LESTER,<br><br>Debtor. | Case No.: 20-24123-E-11<br><br>DC No.　　FWP-2<br><br>Date:　　October 1, 2020<br>Time:　　10:30 p.m.<br>Place:　　501 I Street<br>　　　　　Sacramento, CA<br>　　　　　Ctrm. 33, 6th Flr.<br>Judge:　　Hon. Ronald H. Sargis |

**CONDITIONAL OPPOSITION TO DEBTOR IN POSSESSION'S FURTHER USE OF CASH COLLATERAL PURSUANT TO HIS EMERGENCY MOTION FOR AN ORDER (A) AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL; (B) GRANTING REPLACEMENT LIENS; AND (C) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Creditor FIRST NORTHERN BANK OF DIXON ("Bank"), hereby conditionally opposes the Debtor in Possession's (Debtor's) Emergency Motion ("Motion") for an Order (A) Authorizing Interim and Final Use of Cash Collateral; (B) Granting Replacement Liens; and (C) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 ("Objection") as follows:

## **INTRODUCTION**

1.　As the court well knows, the Bank has serious reservations regarding the Debtor's viability as a going-concern in the organic walnut industry.  Those reservations, among other factors of which the court is not yet aware, give rise to a substantial concern that the Debtor will be unable to fully repay the Bank on its various claims within a reasonable period of time.  The Bank believes, and the Debtor appears to concede, that the present business environment for the Debtor, is bleak.  This environment includes, but is not limited to, the monumental difficulties caused by the COVID pandemic and ongoing trade wars, resulting in a significantly depressed organic walnut industry.  These difficulties do not lend themselves to a foreseeable successful operational reorganization. The Debtor's substantial debt load, combined with uncertain and depressed revenues, lead to one conclusion only – that the Debtor will need to sell significant assets in order to pay creditors and, perhaps, retain some meaningful assets for himself.

2.　At this stage of this chapter 11 case, however, the Bank recognizes that these "larger" issues may not be front and center in the court's consideration as to the path this case may (or should) take.  Suffice it to say, at present, that events are transpiring and will undoubtedly continue to unfold in this case, and evidence will develop, that will be of the utmost consequence to the decisions to be made by the Debtor, the Bank, other creditors, and this court. For now, based on currently available evidence and other relevant considerations, the Bank is conditionally willing to consent to the Debtor's further use of its cash collateral, for the month of October, 2020, upon the terms and conditions set forth herein.

3.　As the court will see, these terms and conditions, primarily in the nature of reporting requirements, are both typical of those in play between the Bank and the Debtor pre-petition and customary between lenders and borrowers in commercial (including agricultural lending) relationships such as is present here.  Moreover, the terms and conditions are entirely reasonable under the circumstances of this chapter 11 case.

/ / /

Hefner, Stark & Marois, LLP
Sacramento, CA

# **TERMS AND CONDITIONS OF CONTINUED CONSENT TO DEBTOR'S USE OF CASH COLLATERAL**

4.　A "third interim order for use of cash collateral" must use the second interim order as a template, with certain additional provisions related to the Debtor's financial reporting. In part, this is to avoid "reinventing the wheel" when there is no need to do so. To be clear, a third interim order must contain all of the replacement and other liens / adequate protection previously provided to the Bank in the first and second interim orders, without alteration.

5.　The additional reporting provisions should be included in, or in addition to, paragraph 9 of the contemplated third interim order, for the following reporting / information:

　　a.　The Debtor should provide more simplified weekly cash reports on a "cash in / cash out" basis. These should be in ledger or "income statement" form rather only in the spreadsheet format that the Debtor, through his financial advisor Mr. Burbank, has been preparing. As to both the reported revenue and expenses, these reports should be itemized so that interested parties can easily ascertain the sources of the Debtor's income, i.e. from what sales / accounts receivables (ARs) the income was generated, and what specific expenses have been paid out. In this respect, labor expenses should be provided in detail, with the names of the employees and the specific amounts paid to them bi-weekly. Given the relatively low number of employees, this should not be burdensome to the Debtor.

　　b.　With respect to the sales booked by the Debtor each week, the Debtor should provide copies of the actual invoices created for each sale. Invoices should show the date of the sale, the name of the purchaser, a description of what product is being sold and the quantity thereof, the price for that product, and the terms of payment on the sale.

　　c.　The Debtor should provide an AR report showing outstanding invoices and the dates thereof, and the dates of collections on the Debtor's various ARs. The AR report will identify the name of the account debtor, the amount owed, and the "aging" of the account, with appropriate columns in that regard.

　　d.　The Debtor should provide Mr. Burbank's actual Excel spreadsheets

Hefner, Stark & Marois, LLP
Sacramento, CA

1  upon delivery of each, rather than just the PDF versions of same. That will enable interested
2  parties to use, evaluate, and analyze the data more efficiently.

3        6.      The Debtor and his financial advisor have now generated a number of different
4  budgets which has caused some confusion. The Bank understands that this is not inherently
5  unusual in the early stages of a chapter 11 case that was filed as a skeletal filing, but it is
6  important for all concerned to know precisely what is being proposed at a given point in time.
7  Here, we know what the original budget was – that being the version filed with the emergency
8  cash collateral motion. There have been several revised budgets since then, however,
9  making it difficult to track actual performance against budgeted projections. Interested
10 parties and the court should be able to easily track the Debtor's progress, from one budget
11 through revised budgets, in a clear fashion. In this regard, the Bank suggests that Debtor
12 provide on a weekly basis a spreadsheet in which the first column shows the original budget,
13 the second column shows the second budget, and a third column showing the variances
14 between the two. The fourth column could then show cumulative variances from the third
15 budget to original budget. To the extent there are budgets beyond the third budget, the
16 Debtor should provide similar treatment in the spreadsheet.

17       7.      Finally, in the operative budget for which an order has been issued, the Debtor
18 should provide a spreadsheet showing a column with the original budget, a column with the
19 current (operative) budget (together with its date), and a column showing the variance
20 between the original budget and the current budget, together with the variance between the
21 actual to the original budget, and actual to current budget.

22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

Hefner, Stark & Marois, LLP
Sacramento, CA

4

\\hsmfs2.hsmlaw.com\Clients\First Northern Bank of Dixon\Lester, Russell Wayne (8755-0001)\pldg conditional opposition [FWP-2] use of cash collateral\pldg conditional opposition to use of cash collateral.docx

8. Should the foregoing be incorporated into an agreed-upon order or an order otherwise directed by the court, the Bank consents to the Debtor's continued use of its cash collateral for the month of October, 2020. In addition, the Bank reserves the right to file additional pleadings and submit evidence in support of its opposition should circumstances change between the filing of this Conditional Opposition and the hearing on the continued motion to which it relates.

Dated: September 28, 2020

HEFNER, STARK & MAROIS, LLP

By /s/ Howard S. Nevins
Howard S. Nevins, Attorneys for
FIRST NORTHERN BANK OF DIXON,
Creditor

Hefner, Stark & Marois, LLP
Sacramento, CA

\\hsmfs2.hsmlaw.com\Clients\First Northern Bank of Dixon\Lester, Russell Wayne (8755-0001)\pldg conditional opposition [FWP-2] use of cash collateral\pldg conditional opposition to use of cash collateral.docx