# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

---

**Case Title:** Russell Wayne Lester　　　**Case No.:** 20-24123 - E - 11
　　　　　　　　　　　　　　　　　　　　**Docket Control No.** FWP-2
　　　　　　　　　　　　　　　　　　　　**Date:** 12/10/2020
　　　　　　　　　　　　　　　　　　　　**Time:** 10:30 AM

**Matter:** [12] - Motion/Application Granting Replacement Liens [FWP-2] Filed by Debtor Russell Wayne Lester (isaf) [12] - Motion/Application Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 [FWP-2] Filed by Debtor Russell Wayne Lester (isaf) [12] - Motion/Application to Use Cash Collateral [FWP-2] Filed by Debtor Russell Wayne Lester (isaf)

**Judge: Ronald H. Sargis**
**Courtroom Deputy: Nancy Williams**
**Reporter: Diamond Reporters**
**Department: E**

---

**APPEARANCES for:**
**Movant(s):**
(by phone) Debtor - Russell Wayne Lester; (by phone) Debtor's Attorney - Thomas A. Willoughby
**Respondent(s):**
(by phone) Creditor's Attorney - Jason J. DeJonker; (by phone) Creditor's Attorney - Douglas H. Kraft; (by phone) Creditor's Attorney - Howard S. Nevins; Mr. Russell Burbank by phone

---

## CIVIL MINUTES

HEARING TO BE HELD ON 2/4/2021 at 10:30 AM at Sacramento Courtroom 33, Department E

See Findings of fact and conclusions of law below


Local Rule 9014-1(f)(1) Motion—Hearing Required.

Sufficient Notice Provided.  The Proof of Service states that the Motion and supporting pleadings were served on Debtor in Possession, creditors holding the twenty largest unsecured claims, creditors, parties requesting special notice, and Office of the United States Trustee on September 2, 2020.   The initial emergency hearing was conducted on August 31, 2020, and the final hearing set by order of the court for September 17, 2020.

# The Motion for Authority to Use Cash Collateral is granted, with the matter continued to 10:30 a.m. on February 4, 2021, for final hearing.

This Chapter 11 case was filed on August 27, 2020. The Debtor in Possession and creditors in this case have worked, and continue to work, in good faith to address issues arising. One such issue relates to the use of cash collateral, after entering an emergency first day cash collateral order on September 9, 2020 (Dckt. 95) and then issuing the first interim order for use of cash collateral on September 25, 2020 (Dckt. 171), there have been two prior sets of hearing and interim orders for use of cash collateral issued, the parties being able to only come to agreement for use during limited periods of time. The court's findings and conclusions with respect to these prior hearings are found in the Civil Minutes, at Dockets 75, 177, 190, and 243. The court does not restate the history therein, but incorporates it herein by this reference.

The current authorization to use cash collateral expires on December 11, 2020. Order; Dckt. 246. Debtor in Possession's supplemental pleadings for further use of cash collateral were filed on November 25, 2020, as are the Declaration of Russell Burbank, the Debtor in Possession's Financial Advisor, Dckt. 274, and Exhibits consisting of a new proposed budget, weekly cash collateral reports for the current use period and a report concerning funds that may be received under the Coronavirus Food Assistance Program, Dckt. 288.

In his Declaration, Mr. Burbank testifies that a Simplified Budget for the period December 12, 2020 through March 30, 2021, was filed as Exhibit A with his Motion. Declaration, ¶ ¶ 5, 6; Dckt. 274. The Budget is filed as Exhibit A, Dckt. 275.

**Opposition by Prudential Insurance Company of America ("Prudential")**

Prudential asserts a conditional Opposition. Dckt. 281. It discusses some of the concerns with respect to the prosecution of the case, but a continuing commitment to addressing its concerns with the Debtor in Possession and other creditors. Prudential will consent to a further short authorization to use case collateral, through a date in January 2021. Such consent is conditioned on:

1. Prudential receiving interest payments as provided in its loan documents; and

2. Payment of Prudential's legal expenses based on its asserting to have an oversecured claim.

Prudential computes the interest payment and its legal fees to be current as of January 1, 2021, total $1,201,790.94; consisting of $966,108.89 in unpaid interest and $315,682.05 in legal fees and costs.

**Response by First Northern Bank of Dixon ("FNBD")**

FNBD filed its Conditional Consent to the use of cash collateral. Dckt. 284. FNBD recounts the prior proceedings and replacement liens provided, and seeks to have the prior protections granted continued, stating its conditions as:

FNB's consent is conditioned upon the following:

1. The Secured Creditors shall be granted the Replacement Liens, as set forth in the First Interim Order, the Second Interim Order, the Third Interim Order, and Fourth Interim Order (the "Prior Orders").

2. The Cash Collateral Reporting Requirements shall continue, on a weekly basis, for each Budgeted Week and shall include the weekly Inventory Reporting as provided prior to the Budgeted Week ending November 13, 2020.

3. Counsel for FNB shall have approved the form of Order granting continued use of cash collateral, which shall be consistent with the form of the Prior Orders.

Conditional Consent, p. 11:6-14; Dckt. 284.

**Reply of Debtor in Possession**

The Debtor in Possession was able to get a written reply to the court. Dckt 290. The Debtor in Possession suggest the following:

- A. Authorize the Use of Cash Collateral through the week of February 4, 2021.

- B. Set the Final Hearing on the Motion to Use Cash Collateral for February 4, 2021.

- C. Set the following schedule for filing pleadings in this case:

    1. Debtor in Possession will file a proposed plan and disclosure statement by December 17, 2020, and have the hearing on the disclosure statement set on February 4, 2021.

        a. The Notice of Hearing for approval of the disclosure statement shall be served by December 17, 2020.

- D. For the Motion to Use Cash Collateral set for final hearing on February 4, 2021:

    1. The Notice of Final Hearing on the Use of Cash Collateral and amended budgets for the period through March 31, 2021, shall be filed and served by December 17, 2020.

    2. Oppositions filed and served on or before January 14, 2021, and

    3. Replies, if any, filed and served on or before January 28, 2021.

The Third Supplemental Declaration of Russell Burbank was also filed. Dckt. 291. This provides testimony concerning changes in the inventory reporting system and an overview of how the Debtor in Possession intends to address claims in a proposed plan.

## APPLICABLE LAW

Pursuant to 11 U.S.C. § 1101, a debtor in possession serves as the trustee in the Chapter 11 case when so qualified under 11 U.S.C. § 322. As a debtor in possession, the debtor in possession can use, sell, or lease property of the estate pursuant to 11 U.S.C. § 363, but is limited when that property is cash collateral as follows:

> (c)
> . . .
> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
>
> (3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.
>
> (4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

Since the use of cash collateral and the concept is well known to the experienced attorneys involved in this case, the court provides the brief discussion below from COLLIER ON BANKRUPTCY on the required adequate protection if a creditor's cash collateral is being used:

> [3] Form of Adequate Protection for Use of Cash Collateral
>
> In the context of a request for authorization to use cash collateral under section 363(c)(2), it is unlikely that the creditor will be able to receive the precise equivalent of cash collateral. However, section 363 does not require precise equivalency. The special treatment afforded cash collateral recognizes its unique status as the highest and best form of collateral but also establishes that upon an

appropriate showing it can be used if the rights of the secured creditor can be adequately protected. Whether adequate protection may be said to exist will depend on a number of factors, including the value of all collateral, the nature of the proposed use and the value of that which is being offered. While cases are quite varied, substitute liens, **equity cushions and operating controls have all been found sufficient**. [12]   But maintaining insurance and granting a right to inspect books and records, without more, is not sufficient, where business is declining. [12a]

> 12.   *In re James Wilson Assocs.*, 965 F.2d 160, 26 C.B.C.2d 1673 (7th Cir. 1992); *Prudential Ins. Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 12 C.B.C.2d 323 (8th Cir. 1985); *Martin v. Commodity Credit Corp.* 761 F.2d 472, 12 C.B.C.2d 974 (8th Cir. 1985); *Crocker Nat'l Bank v. American Mariner Indus. (In re American Mariner Indus.)*, 734 F.2d 426, 10 C.B.C.2d 910 (9th Cir. 1984), overruled on other grounds, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740, 17 C.B.C.2d 1368 (1988); *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470 (S.D.N.Y. 2013). Although the grant of an administrative priority is not adequate protection, see 11 U.S.C. § 361(3), at least one court has held that where the debtor failed to give proper notice to a creditor entitled to protection and failed to provide adequate protection, section 507(b) could provide an equitable solution. *See In re Center Wholesale, Inc.*, 759 F.2d 1440, 12 C.B.C.2d 1107 (9th Cir. 1985); *see also In re California Devices, Inc.*, 126 B.R. 82, 84 (Bankr. N.D. Cal. 1991) (purpose of section 507 is to "[e]stablish a failsafe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' … may later prove inadequate").
>
> 12a.  *In re Sterling Estates (Delaware), LLC*, 64 C.B.C.2d 1745, 2011 Bankr. LEXIS 54 (Bankr. N.D. Ill. Jan. 6, 2011).

3 Collier on Bankruptcy, Sixteenth Edition, ¶ 363.05[3].

Federal Rule of Bankruptcy Procedure 4001(b) provides the procedures in which a trustee or a debtor in possession may move the court for authorization to use cash collateral.  In relevant part, Federal Rule of Bankruptcy Procedure 4001(b) states:

(b)(2) Hearing

The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral

as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

## DISCUSSION

The proposed cash collateral budget for the period through the week of February 4, 2020, set forth in Exhibit A is:

[Intentional Page Break]