# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

**Case Title:** Russell Wayne Lester

**Case No.:** 20-24123 - E - 11
**Docket Control No.** FWP-2
**Date:** 02/04/2021
**Time:** 10:30 AM

**Matter:** [12] - Motion/Application Granting Replacement Liens [FWP-2] Filed by Debtor Russell Wayne Lester (isaf) [12] - Motion/Application Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 [FWP-2] Filed by Debtor Russell Wayne Lester (isaf) [12] - Motion/Application to Use Cash Collateral [FWP-2] Filed by Debtor Russell Wayne Lester (isaf)

**Judge:** Ronald H. Sargis
**Courtroom Deputy:** Nancy Williams
**Reporter:** Diamond Reporters
**Department:** E

**APPEARANCES for:**
**Movant(s):**
(by phone) Debtor - Russell Wayne Lester; (by phone) Debtor's Attorney - Thomas A. Willoughby; (by phone) Debtor's Attorney - Lauren M. Kawano
**Respondent(s):**
(by phone) Creditor's Attorney - Nicholas R. Marcus; (by phone) Creditor's Attorney - Jason J. DeJonker; Creditor's Attorney - Douglas H. Kraft

## CIVIL MINUTES

HEARING TO BE HELD ON 2/23/2021 at 10:30 AM at Sacramento Courtroom 33, Department E

See Findings of fact and conclusions of law below

### ORDER TO BE PREPARED BY: Movant(s)

Local Rule 9014-1(f)(1) Motion—Hearing Required.

Sufficient Notice Provided. The Proof of Service states that the Motion and supporting pleadings were served on Debtor in Possession, creditors holding the twenty largest unsecured claims, creditors, parties requesting special notice, and Office of the United States Trustee on September 2, 2020. The initial emergency hearing was conducted on August 31, 2020, and the final hearing set by order of the court for September 17, 2020.

# The Motion for Authority to Use Cash Collateral is granted through February 26, 2021, with the hearing continued to 10:30 a.m. on February 23, 2021.

## REVIEW OF THE MOTION

This Chapter 11 case was filed on August 27, 2020. The Debtor in Possession and creditors in this case have worked, and continue to work, in good faith to address issues arising. One such issue relates to the use of cash collateral, after entering an emergency first day cash collateral order on September 9, 2020 (Dckt. 95) and then issuing the first interim order for use of cash collateral on September 25, 2020 (Dckt. 171), there have been two prior sets of hearing and interim orders for use of cash collateral issued, the parties being able to only come to agreement for use during limited periods of time. The court's findings and conclusions with respect to these prior hearings are found in the Civil Minutes, at Dockets 75, 177, 190, and 243. The court does not restate the history therein, but incorporates it herein by this reference.

The current authorization to use cash collateral expires on December 11, 2020. Order; Dckt. 246. Debtor in Possession's supplemental pleadings for further use of cash collateral were filed on November 25, 2020, as are the Declaration of Russell Burbank, the Debtor in Possession's Financial Advisor, Dckt. 274, and Exhibits consisting of a new proposed budget, weekly cash collateral reports for the current use period and a report concerning funds that may be received under the Coronavirus Food Assistance Program, Dckt. 288.

In his Declaration, Mr. Burbank testifies that a Simplified Budget for the period December 12, 2020 through March 30, 2021, was filed as Exhibit A with his Motion. Declaration, ¶ ¶ 5, 6; Dckt. 274. The Budget is filed as Exhibit A, Dckt. 275.

**Opposition by Prudential Insurance Company of America ("Prudential")**
On January 14, 2021, Prudential filed its Supplemental Conditional Objection to the further use of cash collateral. Dckt. 326. Prudential recounts the ongoing communications with the Debtor in Possession and their efforts to reach mutually agreeable terms for a plan. Such has not yet been reached.

Prudential expresses concern about the Estate's, and ultimately Debtor's ability under a Plan, to generate income in the uncertain agricultural market. Prudential discusses the decline in the actual 2020 crop from the estate property from the earlier projections by the Debtor in Possession. Additionally, Prudential incorporates its earlier concerns/objections.

In its continuing commitment to try addressing its concerns with the Debtor in Possession and other creditors, Prudential will consent to a further short authorization to use case collateral, through March 31, conditioned on:

    1.    Prudential receiving interest payments as provided in its loan documents; and

      2.      Payment of Prudential's legal expenses based on its asserting to have an oversecured claim.

Prudential computes the interest payment and its legal fees to be current as of January 1, 2021, total $1,201,790.94; consisting of $966,108.89 in unpaid interest and $315,682.05 in legal fees and costs.

**Response by First Northern Bank of Dixon ("FNBD")**

      FNBD filed its Conditional Consent to the further use of cash collateral. Dckt. 3420. FNBD recounts the prior proceedings and replacement liens provided. It further discusses variances in the actual from the budgets for the operation of the agricultural operations of the bankruptcy estate. By FNBD's calculation, the 2020 walnut harvest came in 29% smaller than projected. With respect to sales, for the period through January 1, 2021, FNBD computes the sales also coming in 29% less than projected in the budgets. FNBD also notes that from the sales, there is an outstanding account receivable from one purchaser of $72,943 that is more than 120 days past due, that appears to be of questionable collectability. If this amount is backed out of the reported sales, FNBD computes the actual, paid for sales of walnuts to be only 50% of the projections in the budgets.

      FNBD also provides an analysis of the cash receipts received by the bankruptcy estate, concluding that they fall 30% short of the budgets. On the brighter side, in reviewing the case disbursements, FNBD computes that they have been 46% lower than projected in the budgets. This has resulted in the information provided showing a positive cash flow, occurring by FNBD's computation due to the estate's expenditures having been so greater reduced from what was budgeted.

      FNDB states concerns over the Debtor in Possession projections and the ability to produce the increases in sales. It also notes the administrative expenses for professionals employed by the Debtor in Possession.
      Notwithstanding the concerns, FNDB is willing to consent to the use of cash collateral through March 5, 2021, as shown in the Second Amended Budget, with no provision for emergency variances, on the following conditions:

      1. The Secured Creditors shall be granted the Replacement Liens, as set forth in the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order and Fifth Interim Order (the "**Prior Orders**").

      2. The Cash Collateral Reporting Requirements shall continue, on a weekly basis, for each Budgeted Week.

      3. Beginning with the Monthly Operating Report to be filed for the month-ended December 31, 2020, and each month thereafter, Debtor in Possession shall be ordered to file a Statement of Operations in the form required in General Business Cases filed in the Eastern District of California.

> 4. Beginning with the Monthly Operating Report to be filed for the month-ended December 31, 2020, and each month thereafter, Debtor in Possession shall be ordered to include in the Balance Sheet filed with the Monthly Operating Report the amount of Accrued Professional Fees incurred through the date of such report.
>
> 5. Counsel for FNB shall have approved the form of Order granting continued use of cash collateral, which shall be consistent with the form of the Prior Orders.

Conditional Consent, p. 13:2-16; Dckt. 320.

**Reply of Debtor in Possession**

The Debtor in Possession filed his written Reply. Dckt 380. The Debtor in Possession makes the following points. First, it asserts that Prudential does not have any interest in the cash collateral being used. Also, the Debtor in Possession asserts that Prudential is "vastly oversecured."

For FNBD, the Debtor in Possession believes that FNBD seeks to be too involved in making decisions over the operation of the bankruptcy estate. This sounds in the nature of the Debtor in Possession perceiving FNBD moving from the position of a creditor to that of a fiduciary responsible for the operation of the estate. (Clearly, FNBD would, and likely will, state at the hearing that it is merely expressing its concerns and is not trying to "micro-manage" this bankruptcy estate.)

The Debtor in Possession states with the conservation easement procured by the Debtor, from which the bankruptcy estate will benefit, the proceeds thereof will virtually assure the payments to creditors. The Declaration of Russell Burbank, the Senior Managing Director at BPM, LLP, the Financial Advisor to the Debtor in Possession is filed in support to the Reply. Dckt. 381. In discussing the adequate protection being afforded FNBD, he testifies:

> 11. With respect to adequate protection for FNB, the Debtor in Possession owns Putah Creek, regarding which FNB has shared an appraisal that valued the property at approximately $5,600,000. The only liens on Putah Creek are approximately $2,000,000 of loans owed to FNB; however, such loans are not cross-collateralized. As such, even in the unlikely event, there was a failure of adequate protection, there is more than adequate unencumbered equity in Putah Creek alone to allow this case to proceed to confirmation of the proposed Plan.

Declaration, ¶ 11; Dckt. 381.

The Debtor in Possession closes, requesting that the court issue a final order authorizing the use of cash collateral through April 2, 2021. Reply, ¶ 10; Dckt. 380.

## APPLICABLE LAW

Pursuant to 11 U.S.C. § 1101, a debtor in possession serves as the trustee in the Chapter 11 case when so qualified under 11 U.S.C. § 322. As a debtor in possession, the debtor in possession can use, sell, or lease property of the estate pursuant to 11 U.S.C. § 363, but is limited when that property is cash collateral as follows:

(c)

. . .

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

Since the use of cash collateral and the concept is well known to the experienced attorneys involved in this case, the court provides the brief discussion below from COLLIER ON BANKRUPTCY on the required adequate protection if a creditor's cash collateral is being used:

> [3] Form of Adequate Protection for Use of Cash Collateral
>
> In the context of a request for authorization to use cash collateral under section 363(c)(2), it is unlikely that the creditor will be able to receive the precise equivalent of cash collateral. However, section 363 does not require precise equivalency. The special treatment afforded cash collateral recognizes its unique status as the highest and best form of collateral but also establishes that upon an appropriate showing it can be used if the rights of the secured creditor can be adequately protected. Whether adequate protection may be said to exist will depend on a number of factors, including the value of all collateral, the nature of the proposed use and the value of that which is being offered. While cases are quite varied, substitute liens, **equity cushions and operating controls have all been found sufficient**. [12] But maintaining insurance and granting a right to inspect books and records, without more, is not sufficient, where business is declining. [12a]

12. *In re James Wilson Assocs.*, 965 F.2d 160, 26 C.B.C.2d 1673 (7th Cir. 1992); *Prudential Ins. Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 12 C.B.C.2d 323 (8th Cir. 1985); *Martin v. Commodity Credit Corp.* 761 F.2d 472, 12 C.B.C.2d 974 (8th Cir. 1985); *Crocker Nat'l Bank v. American Mariner Indus. (In re American Mariner Indus.)*, 734 F.2d 426, 10 C.B.C.2d 910 (9th Cir. 1984), overruled on other grounds, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740, 17 C.B.C.2d 1368 (1988); *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470 (S.D.N.Y. 2013). Although the grant of an administrative priority is not adequate protection, see 11 U.S.C. § 361(3), at least one court has held that where the debtor failed to give proper notice to a creditor entitled to protection and failed to provide adequate protection, section 507(b) could provide an equitable solution. *See In re Center Wholesale, Inc.*, 759 F.2d 1440, 12 C.B.C.2d 1107 (9th Cir. 1985); *see also In re California Devices, Inc.*, 126 B.R. 82, 84 (Bankr. N.D. Cal. 1991) (purpose of section 507 is to "[e]stablish a failsafe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' … may later prove inadequate").

12a. *In re Sterling Estates (Delaware), LLC*, 64 C.B.C.2d 1745, 2011 Bankr. LEXIS 54 (Bankr. N.D. Ill. Jan. 6, 2011).

3 Collier on Bankruptcy, Sixteenth Edition, ¶ 363.05[3].

Federal Rule of Bankruptcy Procedure 4001(b) provides the procedures in which a trustee or a debtor in possession may move the court for authorization to use cash collateral. In relevant part, Federal Rule of Bankruptcy Procedure 4001(b) states:

(b)(2) Hearing

The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

## DISCUSSION

The proposed cash collateral budget for the period through the week of February 4, 2020, set forth in Exhibit A is:

   The Parties are now using mediation to try and hammer out their differences to put together a consensual plan. They have agreed to continue a number of other items in dispute, but the court must address the cash collateral Motion.

   At the hearing, the parties agreed to extend the use of cash collateral, in light of the pending mediation, through February 26, 2021, and setting a final hearing on this Motion at 10:30 a.m. on February 23, 2021.

Counsel for the Debtor in Possession shall prepare and lodge with the court a proposed order consistent with this ruling, which has been approved as to form by counsel for Prudential and counsel for FNBD.