DOUGLAS H. KRAFT, ESQ. (State Bar No. 155127)
KRAFT LAW
11335 Gold Express Drive, Suite 125
Gold River, California 95670
Telephone: (916) 880-3040
Facsimile: (916) 880-3045

HOWARD NEVINS, SBN 119366
AARON A. AVERY, SBN 245448
HEFNER, STARK & MAROIS, LLP
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-4136
Telephone: (916) 925-6620
Facsimile: (916) 925-1127

Attorneys for First Northern Bank of Dixon, Creditor

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In Re:<br><br>   RUSSEL WAYNE LESTER, an individual, dba Dixon Ridge Farms,<br><br>                Debtor in Possession. | Case No: 20-24123-E-11<br><br>Chapter 11<br><br>DCN: FWP-2<br><br>Date:        April 8, 2021<br>Time:       2:00 p.m.<br>Courtroom:  33 – Judge Ronald H. Sargis<br>                   Modesto Division<br>                   1200 I Street, Suite 200<br>                   Modesto, CA |

**<u>OPPOSITION TO DEBTOR IN POSSESSION'S AMENDED MOTION FOR ORDER</u>**

**<u>(A) AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL; AND</u>**

**<u>(B) GRANTING REPLACEMENT LIENS</u>**

1
_____
**OPPOSITION TO USE OF CASH COLLATERAL**

First Northern Bank of Dixon, a California corporation ("**FNB**"), creditor in this case, hereby files its opposition (the "**Opposition**") to the Amended Motion For Order (A) Authorizing Interim and Final Use of Cash Collateral; and (B) Granting Replacement Liens (the "**Amended Motion**") filed by the debtor in possession, Russell Wayne Lester ("**Debtor in Possession**" or "**DIP**"). This Opposition is supported by the Request for Judicial Notice ("RFJN") and the Declaration of Marion Fong (the "**Fong Declaration**") filed concurrently with this Opposition.

# I.

# PROCEDURAL HISTORY

On September 1, 2020, Debtor in Possession made his Emergency Motion for an Order (A) Authorizing Interim and Final Use of Cash Collateral; (B) Granting Replacement Liens; and (C) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "**Motion**"). On September 8, 2020, the Court entered its Order on the Motion (the "**First Interim Order**") which authorized the Debtor in Possession to use the Cash Collateral of FNB and Prudential Insurance Company of America ("**Prudential**") and any disputed producer lien creditors that may exist (collectively, "**Secured Creditors**") on an interim basis through September 16, 2020, for necessary expenses in the amount of $166,325.00 plus a 15% variance for emergencies during the pre-harvest period as described in the Motion. A true and correct copy of the First Interim Order is attached as **Exhibit A** to the RFJN.

In addition, for the purpose of attempting to provide adequate protection for the interests of the Secured Creditors, to the extent of any diminution in Secured Creditors' interest in the Debtor in Possession's pre-petition cash collateral caused by Debtor in Possession's post-petition use of such pre-petition cash collateral, the First Interim Order granted to the Secured Creditors:

    a.    A valid, perfected, and enforceable replacement lien under Sections 105, 361(2), and 363(e) of the Bankruptcy Code in the Debtor in Possession's post-petition cash collateral and proceeds thereof to the same extent and with the same priority that

Secured Creditors held in the Debtor in Possession's pre-petition cash collateral as of the Petition Date, (the "**Cash Collateral Replacement Lien**");

    b.    A valid, perfected, and enforceable replacement lien under Sections 105, 361(2), and 363(e) of the Bankruptcy Code in the Conservation Easement, as defined in the Motion, to the same extent and with the same priority that Secured Creditors held in the Debtor in Possession's pre-petition cash collateral as of the Petition Date (the "**Conservation Easement Replacement Lien**").

In addition, the Interim Order granted to FNB:

    a.    A valid, perfected, and enforceable replacement lien under Sections 105, 361(2), and 363(e) of the Bankruptcy Code in the Putah Creek Road real property, as defined in the Motion to the same extent and with the same priority that the Bank held in the Debtor in Possession's pre-petition cash collateral as of the Petition Date (the "**Putah Creek Replacement Lien**");

    b.    To the extent that FNB does not already possess a valid, first priority lien in the Debtor's crops now growing or grown in the 2020 crop year (the "**2020 Crops**"), a valid, perfected, and enforceable first-priority lien, under Sections 105, 361(2), and 364(d) of the Bankruptcy Code on all of the 2020 Crops, senior in priority to any other security interests and liens in the 2020 Crops, to the same extent and validity of the lien of FNB held in the Debtor in Possession's pre-petition cash collateral as of the Petition Date (the "**Post-Petition Crop Lien**").

There have been seven (7) subsequent hearings on the Motion after the initial hearing on September 1, 2020, and seven (7) additional orders have been entered authorizing the continued use of Cash Collateral on an interim basis (collectively, the "**Interim Orders**").

Each of the Interim Orders continued to provide the Cash Collateral Replacement Lien, the Conservation Easement Replacement Lien, the Putah Creek Replacement Lien, and the Post-Petition Crop Lien (collectively, the "**Replacement Liens**").

The Interim Order entered on September 25, 2020 (the "**Second Interim Order**") also required that within (7) days of the end of each week in which the Debtor in Possession uses Cash Collateral (a "**Budgeted Week**"), the Debtor in Possession shall provide weekly periodic accountings to the Secured Creditors' counsel setting forth the cash receipts and disbursements made by the Debtor in Possession under the Second Interim Order (the "**Cash Collateral Reporting Requirements**"). The Second Interim Order provided that Cash Collateral Reporting Requirements shall include, but not be limited to, a comparison of the Debtor in Possession's actual financial performance, including cash receipts and disbursements, during the preceding Budgeted Week with the forecast financial performance contained in the cash collateral budget for that same Budgeted Week (the "**Cash Collateral Reports**").

A true and correct copy of the Second Interim Order is attached as **Exhibit B** to the RFJN. An amended Cash Collateral Budget (the "**First Amended Budget**") was attached as Exhibit 1 to the Second Interim Order.

The Cash Collateral Reporting Requirements were included in all subsequent Interim Orders.

The Interim Order entered on November 8, 2020 (the "**Fourth Interim Order**") also required the Debtor in Possession to file with the Court an "simplified" cash collateral budget. As required by the Fourth Interim Order, on November 25, 2020, the Debtor in Possession filed with a Court a Supplemental Declaration of Russell Burbank In Support of Debtor In Possession's Simplified Cash Collateral Budget for December 2020 through March 2021 (the "**Burbank November 25 Declaration**"). A "Simplified Budget" was attached as Exhibit A to the Burbank November 25 Declaration (the "**Second Amended Budget**"). A true and correct copy of the Fourth Interim Order is attached as **Exhibit C** to the RFJN.

The Interim Order entered on December 17, 2020 (the "**Fifth Interim Order**") also included a third amended Cash Collateral Budget (the "**Third Amended Budget**") which was

attached as Exhibit A to the Fifth Interim Order. A true and correct copy of the Fifth Interim Order is attached as **Exhibit D** to the RFJN.

The Interim Order entered on February 25, 2021 (the "**Seventh Interim Order**") set a continued interim hearing on the Motion for March 25, 2021 (the "**Eighth Hearing**"). The Seventh Interim Order provided that any supplemental oppositions to the Motion shall be filed on or prior to March 18, 2021, with any supplemental reply being filed on or prior to 12:00 p.m. on March 23, 2021. A true and correct copy of the Seventh Interim Order is attached as **Exhibit E** to the RFJN.

Although no additional supplemental oppositions were filed, on March 23, 2021, Debtor in Possession filed what the Debtor in Possession labeled as a "Reply" to the prior oppositions. The "Reply" filed by the Debtor was actually a proposed amendment to the Motion (the "**Motion Amendment**").

The Motion Amendment requested that the Court grant interim use of cash collateral through the week ended April 8, 2021, in the amount of $75,266.00, plus a 10% variance, pursuant to a cash collateral budget labeled as the "March 23, 2021 13 Week Cash Collateral Budget" (the "**March 23-13 Week Budget**"), which was attached as Exhibit 1 to the Declaration of Russell Burbank filed in support of the Motion Amendment.

The Motion Amendment also requested that the Court set a final hearing on use of cash collateral on April 8, 2021, to authorize additional use of cash collateral in the amount of $765,105.00, through June 25, 2021, as set forth in the March 23-13 Week Budget.

On March 30, 2021, the Court entered its eighth Interim Order (the "**Eighth Interim Order**") authorizing use of Cash Collateral on an interim basis through the week ending April 8, 2021, for necessary expenses in the amount of $75,266.00, plus a 10% variance for emergencies, as described in a March 23-13 Week Budget, which was attached as Exhibit A to the Eighth Interim Order. A true and correct copy of the Eighth Interim Order is attached as **Exhibit F** to the RFJN.

The Eighth Interim Order set a continued interim hearing on the Amended Motion for April 8, 2021 (the "**Ninth Hearing**"). The Eighth Interim Order also provided that any supplemental oppositions to the Amended Motion shall be filed on or prior to April 5, 2021, and any reply to any supplemental opposition shall be filed on or prior to 10:00 a.m. on April 7, 2021.

On April 1, 2021, Debtor in Possession filed his Amended Plan of Reorganization of Debtor in Possession (Dated: April 1, 2021) (the "**Amended Plan**") and Amended Disclosure Statement in Support of Debtor in Possession's Amended Plan of Reorganization (Dated: April 1, 2021) (the "**Amended Disclosure Statements**"). A true and correct copy of the Amended Plan is attached as **Exhibit G** to the RFJN. A true and correct copy of the Amended Disclosure Statement is attached as **Exhibit H** to the RFJN.

# I.

# OPPOSITION

## A. FNB Does Not Consent to Additional Use of Cash Collateral.

There is no dispute that FNB has a first-priority security interest in DIP's inventory, accounts receivable, equipment and general intangibles. Bankruptcy Code Section 363 ("**Section 363**") provides that the DIP may not use Cash Collateral unless each entity that has an interest in such Cash Collateral consents, or the Court, after notice and a hearing, authorizes that use. *11 USC §363(c)(2)*. FNB does not consent to the additional use of FNB's Cash Collateral.

## B. DIP Fails to Justify the Requested Use of Cash Collateral.

### 1. DIP Is Requesting a Significant Increase in the Use of Cash Collateral.

Prior to the Eighth Hearing on use of Cash Collateral, which was held on March 25, 2021, the Court had entered seven (7) Interim Orders interim orders authorizing use of Cash Collateral through March 25, 2021. The use of Cash Collateral through March 25, 2021 was based on four (4) operative Cash Collateral Budgets attached to the first seven (7) Interim Orders (collectively, the "**Prior Budgets**"). The Third Amended Budget was the last

operative Cash Collateral budget prior to the Eighth Hearing. The Third Amended Budget covered use of Cash Collateral through the week ended March 26, 2021.

As provided in the Interim Orders, the DIP has provided weekly Cash Collateral Reports comparing the DIP's actual financial performance, including cash receipts and cash disbursements, during each Budgeted Week, with the forecasted financial performance for each Budgeted Week. As of the date of this Opposition, the last Cash Collateral Report was for the week ending March 19, 2021 (the "**March 19 Report**"). FNB has not received a Cash Collateral Report of the week ending March 26, 2021.

A Summary Comparison – Actual vs. Budget for the Period August 29, 2020 through March 19, 2021 (the "**Summary Comparison**") is attached as **Exhibit B** to the Fong Declaration. The Summary Comparison compares, among other things, the budgeted amounts for Cash Receipts and Cash Disbursements (as set forth in the Prior Budgets) to the actual results as set forth in the Cash Collateral Reports through the March 19 Report.

As indicted in the Summary Comparison, actual Cash Disbursements through March 19, 2021 totaled $1,081,835, over the twenty-nine (29) week period through March 19, 2021. Pursuant to the Third Amended Budget, the DIP was authorized to use an additional $8,344 in Cash Collateral in the week ending March 26, 2021. Assuming the DIP used the $8,344 budgeted for the week ended March 26, 2021, the DIP will have had Cash Disbursements totaling $1,090,169 through the thirty-week period ending March 26, 2021.

Pursuant to the Motion Amendment and the March 23-13 Week Budget, the DIP is now requesting authorization to use Cash Collateral to cover an additional $765,105 in Cash Disbursement for the thirteen-week period beginning March 26, 2021 and ending June 25, 2021. The Motion Amendment seeks to significantly ramp up the rate of use of Cash Collateral.

As discussed above, through March 26, 2021, the DIP will have made Cash Disbursements of $1,090,169 over the thirty (30) week period covered by the Prior Budgets, or an average of $36,339 per week. Over the thirteen (13) week period ending June 25, 2021,

**OPPOSITION TO USE OF CASH COLLATERAL**

the DIP intends to make additional Cash Disbursements of $765,105 in Cash Collateral, or an average of $58,854 per week, which is an increase of $22,215 per week, 62%, over the average weekly Cash Disbursements under the Prior Budgets.

As set forth in **Exhibit B** to the Fong Declaration, the most notable increases in Cash Disbursements will occur under the following expense categories:

- Labor and Related – increases from an average of $22,583 per week to an average of $26,115 per week, a 16% increase.
- Farming – increases from an average of $2,081 per week to an average of $6,024 per week, a 189% increase.
- Processing – increases from an average of $6,369 per week to an average of $8,032 per week, a 26% increase.
- Administrative – increases from an average of $3,930 per week to an average of $10,936 per week, a 178% increase.
- Other Operating – increases from a total of $97 for the thirty (30) week period, or an average of $3 per week, to $80,000 for the thirteen (13) week period, an increase of 190147%.

**2. The DIP Provides No Justification for the Increase in Cash Disbursements.**

Federal Rule of Bankruptcy Procedure ("F**RBP**") Rule 4001(b)(1)(B) provides that a motion for authority to use cash collateral shall set forth the purposes for the use of Cash Collateral. In addition, it is implicit in Section 363 that the debtor articulate a business justification for the use of cash collateral. *Matter of Plaza Family Partnership* (ED CA 1989) 95 BR 166, 173

Here, the DIP provides no articulation or evidence justifying the use of an additional $765,105 of Cash Collateral. While the DIP's financial advisor, Russell Burbank, has provided Declarations with each version of the Prior Budgets, those Declarations are conclusory, and simply state that the amounts requested per the budgets are the amount the

**OPPOSITION TO USE OF CASH COLLATERAL**

DIP needs to use.  The only Declaration received from the DIP justifying use of Cash Collateral was the Omnibus Declaration filed on September 1, 2020 with the Motion.

Since the DIP is in the farming business, it may be that the DIP's farming related expenses increase in the spring. However, the creditors and the Court should not have to make such assumptions.  Presumably, the DIP has a farming plan and a farming budget for each property farmed.  The DIP should provide evidence of the farming plan and farming budget for each property farmed, as well as a projection of crop yields and crop prices, to justify those expenditures.

The DIP's declaration filed September 1, 2020, on an "emergency" basis, has little, if any, relevance to the DIP's latest proposed budget.  The fact that the DIP has never filed a declaration in support of his recurring requests to use cash collateral is telling.  Mr. Burbank, the Debtor's financial advisor (not a farmer or a processor), cannot provide competent testimony to satisfy the DIP's burden of demonstrating that further use of cash collateral should be approved.  All Mr. Burbank can do, which he has done since the outset of this case, is to testify that true and correct copies of the work he has done for the DIP/the Estate, presumably with information from the DIP, have been filed with the court in support of the cash collateral motions.  Only the DIP can testify as to what funds are required for his operations, why they must be expended, how such expenditures will benefit the Estate and its creditors, and how the secured creditors will be adequately protected from such proposed use.

The DIP must provide an explanation and justification for the significant increases in Labor and Related, Farming, Processing and Administrative expenses.  The DIP must also provide an explanation and justification for the $80,000 of Other Operating expense.

As the DIP has failed to provide any evidence justifying the continued use of Cash Collateral, the Amended Motion must be denied.

**C.  The Debtor Fails to Provide Evidence that FNB is Adequately Protected.**

On the request of a secured creditor holding an interest in Cash Collateral, the Court shall prohibit or condition the debtor's use of Cash Collateral as is necessary to provide

adequate protection of the creditor's interest in the collateral. *11 USC §363(c)(2).* FNB requests that the Court prohibit or condition the DIP's use of Cash Collateral as necessary to provide FNB adequate protection for use of FNB's Cash Collateral.

Section 363 also provides that the DIP has the burden of proving that FNB's security interest in Cash Collateral is adequately protected. *11 USC §363(p)(1).* The DIP has provided no evidence in connection with the Amended Motion to show that FNB will be adequately protected for the additional use of Cash Collateral as requested in the Amended Motion.

**D. The Replacement Liens Fail to Provide FNB with Adequate Protection for the Additional Use of Cash Collateral.**

**1. Cash Collateral Replacement Lien.**

The Cash Collateral Replacement Lien provides a replacement lien on the DIP's post-petition Cash Collateral to the extent of any diminution of FNB's interest in DIP's pre-petition Cash Collateral.

As set forth in the Summary Comparison, the DIP's beginning cash was $983. During the twenty-nine (29) week period ending March 19, 2021, the DIP generated Cash Receipts of $1,639,120, and had Cash Disbursements totaling $1,081,825, generating Net Cash Flow of $557,294, resulting in a cash balance of $558,278 as of March 19, 2021.

Assuming the DIP uses the full $8,344 authorized for the week ending March 26, 2021, the DIP will have used $1,091,169 of FNB's Cash Collateral through March 26, 2021.

The Amended Motion seeks authorization to use an additional $765,105 of FNB's Cash Collateral. If that full amount is used, the DIP will have used $1,855,274 of FNB's Cash Collateral through June 25, 2021.

The March 23-13 Week Budget shows that the DIP will have $210,842 in cash on June 25, 2021. Since the DIP will have used $1,885,274 of FNB's Cash Collateral through June 25, 2021, and since the DIP's cash balance on June 25, 2021 will be only $210,842, the Cash Collateral Replacement Lien will fall short of providing adequate protection for FNB's use of Cash Collateral by $1,644,431 (the "**Adequate Protection Shortfall**").

**2. Conservation Easement Replacement Lien.**

The Conservation Easement Replacement Lien gives FNB a replacement lien in the Conservation Easement. The DIP has signed a letter of intent with Solano Land Trust to sell the Conservation Easement for $5,700,000. (*See,* Amended Disclosure Statement, p. 17, line 14-26). The Amended Plan provides that the proceeds from the sale of the Conservation Easement shall be disbursed as follows: (i) the first $3,000,000 is to be paid to Prudential; (ii) the next $1,500,000 is to be paid to the DIP to pay the costs of the sale of the Conservation Easement, and the Administrative Claims of the Bankruptcy case; and (iii) any proceeds above $4,500,000 are to be paid to Prudential. (*See,* Amended Plan, Section 4.1.iv).

As such, pursuant to the Amended Plan, there will be no proceeds available from the Conservation Easement Replacement Lien to cover the Adequate Protection Shortfall.

**3. Putah Creek Replacement Lien.**

The Putah Creek Replacement Lien gives FNB a replacement lien on the Putah Creek Property. FNB has obtained an Appraisal Report on the Putah Creek Property (the "**Putah Creek Appraisal**"), which indicates that the market value of the Putah Creek Property as of July 22, 2020 is $5,650,000. A true and correct copy of the Putah Creek Appraisal is attached as **Exhibit T** to the Declaration of Chaille James filed as Doc 122 (the "**James Declaration**"). A true and correct copy of the James Declaration is attached to the RFJN as **Exhibit I.** A true and correct copy of Putah Creek Appraisal is attached to the RFJN as **Exhibit J.**

FNB's RE Loan in the original amount of $2,000,000 is evidenced by Claim # 18 and is secured by a first-priority deed of trust on the Putah Creek Property. The amount of the RE Loan Claim was $1,443,657.64 as of the Petition Date. Post-petition interest of $58,193.20 has accrued through March 26, 2021, bringing FNB's RE Loan Claim to $1,501,852.84 (exclusive of post-petition attorneys' fees and costs).

FNB's HELOC in the original amount of $500,000 is evidenced by Claim # 19 and is secured by a second-priority deed of trust on the Putah Creek Property. The amount of the

HELOC Claim was $505,876.01 as of the Petition Date. Post-petition interest of $14,382.90 has accrued through March 26, 2021, bringing FNB's HELOC Claim to $520,258.91.

The Amended Plan provides that FNB's Ag Production Loan in the original amount of $2,800,000, which is evidenced by Claim #20, will be secured by a third-priority deed of trust on the Putah Creek Property. (*See,* Amended Plan, Section 4.4 Class 2C). The amount of the Ag Production Loan Claim was $2,992,121.38 as of the Petition Date. Post-petition interest of $138,016.20 has accrued through March 26, 2021, bringing FNB's Ag Production Claim to $3,130,137.58.

After encumbering the Putah Creek Property with the FNB Ag Production Loan, the equity in the Putah Creek Property available for adequate protection for use of FNB's Cash Collateral will be $497,750.67, calculated as follows:

| | |
|---|---:|
| Appraised Value | $5,650,000.00 |
| RE Loan Claim – 1st Priority DT | $1,501,852.84 |
| HELOC Claim – 2nd Priority DT | $520,258.91 |
| Ag Production Loan Claim – 3rd Priority Position | $3,130,137.58 |
| Total Encumbrances | $5,152,249.33 |
| Net Equity in Putah Creek | $497,750.67 |

FNB will incur fees and expenses with respect to the disposition of the Putah Creek Property. Assuming 7.5% of the Appraised Value for the disposition fees and expenses of $423,750, the net equity available in the Putah Creek Property will be approximately $74,000. The equity in the Putah Creek Property will not be sufficient to cover the full amount of the Adequate Protection Shortfall. After applying the net equity in Putah Creek Property, the Adequate Protection Shortfall will be $1,570,430.33.

///
///
///

**4. Post-Petition Crop Lien.**

The Post-Petition Crop Lien provides FNB with a lien on the 2020 Crops to the extent that FNB does not already hold a lien on the 2020 Crops. FNB contends that FNB already had a first-priority security interest in the 2020 Crops.

The 2020 Crops have now been harvested, and pursuant to Attachment A to the DIP's Monthly Operation Report for the month ended February 28, 2020 (the "**February MOR**"), the 2020 Crops are now part of the DIP's inventory. A true and correct copy of the February MOR is attached to the RFJN as **Exhibit K.**

Pursuant to Attachment A to the February MOR, the DIP reports the total value of DIP's inventory on the Petition Date was $3,672,864. Attachment A also shows that the 2020 Crops with a value of $794,358 were added to the DIP's inventory, and that after adding the 2020 Crops to inventory, and that the total value of the DIP's inventory as of February 28, 2021, was $3,664,141, which is $8,723 less than the value of inventory on the Petition Date. As such, it appears that the 2020 Crops replaced the inventory sold over that period, and therefore provide no additional adequate protection to cover the remaining Adequate Protection Shortfall of $1,570,430.33.

**5. The DIP Should be Required to Use DIP's Own Funds Rather Than Cash Collateral.**

A copy of Amened Schedules A/B ("**Schedules A/B**") filed with the Court on January 21, 2021 as Docket 337, is attached to the RFJN as **Exhibit L**. Schedules A/B shows that the DIP had the following funds as of the Petition Date:

**Deposit Accounts**

| | |
|---|---|
| Cash in Bank of West #9683 | $ 57,560.13 |
| Cash in Bank of the West #9661 | $ 24,931.67 |
| Cash in FNB #1136 | $      211.87 |
| Cash in FNB #4192 | $   2,606.52 |
| Cash in FNB #3033 | $      121.96 |

| | | |
|---|---|---|
| 1 | Total Cash in Banks | $ 82,825.63 |
| 2 | **Money Market Accounts** | |
| 3 | Bank of the West #9725 | $ 26,189.67 |
| 4 | Bank of the West #9709 | $ 70,313.42 |
| 5 | Total Money Market Accounts | $ 96,502.09 |
| 6 | Total Deposit Accounts and MMA's | $179,328.72 |
| 7 | **Stocks and Mutual Funds** | |
| 8 | Stocks | $171,760.17 |
| 9 | Mutual Funds | $ 38,739.50 |
| 10 | Total Stocks and Mutual Funds | $210,499.67 |

Although the DIP showed $179,328.72 in deposit accounts and money market funds on the Petition Date, the DIP only showed a beginning balance of $983 in the DIP checking account on the Prior Budgets (as shown on the Summary Comparison). The only assumption to make is that the DIP considers these funds to be "personal funds" and is not willing to commit these funds to his business operations.

In addition, the Debtor had $210,499.57 in non-retirement stocks and mutual funds on the Petition Date.

Debtor should be required to exhaust the $389,000 of personal funds in cash, money market accounts, stocks, and mutual funds, before using any more of FNB's Cash Collateral.

**E. There Are Ongoing Concerns Regarding the DIP's Viability.**

The DIP continues to suffer astronomical losses in DIP's operations. The DIP estimates that he has already accumulated $4,255,330 in net loss carry forwards and will incur additional net operating losses estimated at $7,900,000 in 2021 (*See,* Amended Disclosure Statement, p. 21, line 21-27).

As shown on the Summary Comparison, the DIP continues to be unable to meet his sales projections by a significant 37% margin.

**14**

___
**OPPOSITION TO USE OF CASH COLLATERAL**

The question is, how can the Court continue to authorize the DIP to operate using secured creditors' collateral with this track record? Simply stated, the Court should not approve any further uses of Cash Collateral at this time, especially since the DIP has other, presumably unencumbered assets at his disposal.

## CONCLUSION

The DIP has provided no evidence to justify the further use of Cash Collateral and no evidence showing that FNB is adequately protected for the use of its Cash Collateral.

Given that the DIP continues to lose money at an astronomical rate, fails to meet his operating budgets by significant amounts, has significant personal funds not committed to his business operation, and that there is an Adequate Protection Shortfall of over $1,500,000, the Amended Motion must be denied.

Dated: April 5, 2021　　　　　　　　KRAFT LAW

　　　　　　　　　　　　　　　　　　*/s/ Douglas H. Kraft*

　　　　　　　　　　　　　　　　　　Douglas H. Kraft
　　　　　　　　　　　　　　　　　　Attorney for First Northern Bank of Dixon

**OPPOSITION TO USE OF CASH COLLATERAL**